

Clark Quincy Park, LLC
7500 Old Georgetown Road
Bethesda, Maryland 20814-6196
Phone: 301-272-2910

# Subcontract Agreement

THIS SUBCONTRACT, made this 10TH DAY OF SEPTEMBER, 2003 by and between **CLARK QUINCY PARK, LLC** (hereinafter "Clark") and **PROSPECT WATERPROOFING COMPANY** of 118 ACACIA LANE, STERLING, VA 20166 (hereinafter "Subcontractor").

### WITNESSETH:

WHEREAS, Clark and **CARR SQUARE 341, LLC C/O CARR ENTERPRISES L.L.C.**, 1750 H STREET, NW, SUITE 500, WASHINGTON, D.C. 20005 (hereinafter "Owner", which term shall cover all of the Owner's agents and representatives including as appropriate the Architect and any other person or entity to the extent the Contract Documents which are hereby incorporated by reference expressly give functions to such person or entity) have entered into a contract dated **June 23, 2003** for the construction of **QUINCY PARK CONDOMINIUM PROJECT, WASHINGTON, D.C.** (hereinafter "Project"), according to the Contract Documents listed in Exhibit A attached hereto (hereinafter "Contract Documents") and available for Subcontractor's review; and

WHEREAS, Clark desires to subcontract certain work specified in the Contract Documents, and Subcontractor desires to perform said work at the prices and upon the terms and conditions hereinafter expressed;

NOW THEREFORE, in consideration of the mutual agreements herein expressed, the parties do contract as follows:

1. Subcontractor's Work

   a.    Subcontractor shall perform all work and shall furnish all supervision, labor, materials, plant, scaffolding, tools, equipment, supplies and all other things necessary for the construction and completion of the work described in Exhibit B and work incidental thereto, in strict accordance and full compliance with the terms of the Contract Documents (which are hereby incorporated by reference) and this Subcontract and to the satisfaction of Clark and the Owner.

   b.    In respect of work covered by this Subcontract, Subcontractor shall, except as otherwise provided herein, have all rights which Clark has under the Contract Documents toward the Owner. Subcontractor shall assume all obligations, risks and responsibilities which Clark has assumed towards the Owner in accordance with the Contract Documents. Subcontractor shall have the right to enforce its rights and remedies and to defend against claims against it by the Owner as provided in Article 11.

2. Complete Agreement

   This Subcontract contains the entire agreement between the parties hereto with respect to the matters covered herein. No other agreements, representations, warranties, or other matters, oral or written, shall be deemed to bind the parties hereto.

3. Performance and Payment Bonds

   a.    Immediately upon receipt of this Subcontract, Subcontractor shall at the expense of N/A furnish to Clark performance and payment bonds in the form attached hereto (Exhibit C) from a surety acceptable to Clark, each in the full amount of this Subcontract.

   ☒ No bond required at Subcontract formation. Article 3.a. not applicable when box is checked and no bond indicated above.

   b.    If Subcontractor has not been required to furnish bonds or if Clark desires Subcontractor to provide additional bond coverage, Clark may, at any time upon written request, instruct Subcontractor to provide within ten (10) days performance and payment bonds, in a form and from a surety acceptable to Clark, in an amount up to the then current full value of this Subcontract. In this event, Clark will reimburse Subcontractor for reasonable bond premium.

   c.    The payment of any incremental increase in the cost of bonds arising as a result of changes in the work shall be the responsibility of Subcontractor and may be included as a part of Subcontractor's price quotation for proposed changes pursuant to Article 9.

4. Payment

   a.    Clark shall pay Subcontractor for performance of the work subject to additions and deductions by change order or other Subcontract provisions, the total sum of **TWO HUNDRED TWENTY FIVE THOUSAND DOLLARS ($225,000.00)**.

   b.    Partial payments shall be due Subcontractor in the amount of 90% of the work in place, which work has been approved by Clark and the Owner, and for which payment has been made to Clark by the Owner. If the Contract Documents allow Clark partial payments for on-site stored materials, partial payments shall also be due Subcontractor in the amount of 90% of materials stored on-site which have been approved by Clark and the Owner and for which payment has been made to Clark by the Owner. If the Contract Documents allow partial payment for materials stored off-site, such payments shall be made to Subcontractor in the amounts and under the standards set forth in the Contract Documents for off-site stored materials which have been approved by Clark and the Owner but only after Clark's receipt of payment therefor from the Owner. For the purpose of determining partial payments, Subcontractor shall submit a breakdown of the total Subcontract price (showing the amount included therein in each principal category of work) to Clark for approval within ten days of the execution of this Subcontract. In the event Clark disapproves said breakdown, Clark shall establish a reasonable breakdown which shall serve as the basis for partial payments.

**EXHIBIT**

tabbies®

1

c.    Partial payments shall be due on or about the *10TH* day of the month following receipt of payment from the Owner by Clark as long as Subcontractor is in compliance with the terms of this Subcontract. No partial payment made under this Subcontract shall be considered an acceptance of the work, in whole or in part.

d.    Subcontractor shall ensure that all lower-tier subcontractors and employees, at all times, are timely paid all amounts due in connection with the performance of this Subcontract. After the first partial payment hereunder, Clark shall have the right to withhold any subsequent partial payments until Subcontractor submits evidence satisfactory to Clark that all amounts owed in connection with performance of this Subcontract have been paid. Further, Subcontractor agrees that Clark, after giving notice to Subcontractor, may pay all persons who have not been paid the monies due them in connection with this Subcontract whether or not a lien has been filed, unless Subcontractor, within 10 days of receipt of notice or such shorter period as Clark finds necessary to meet its obligations to the Owner, (i) demonstrates that such sums are not due and (ii) provides Clark adequate security.

e.    In the event Clark pays or indemnifies any person in accordance with this Subcontract, Subcontractor shall immediately reimburse Clark for the full cost thereof. Subcontractor shall, to the extent that Clark has not recovered said amounts pursuant to withholding, pay said amounts to Clark upon demand. Subcontractor shall also immediately reimburse Clark for any amounts paid under Clark's payment bond in connection with this Subcontract and indemnified by Clark.

f.    All material and work incorporated into the Project or for which partial payment has been made shall become the property of Clark, or, if the Contract Documents so provide, the property of the Owner; however, this provision shall not relieve Subcontractor from the sole responsibility and liability for all work and materials upon which payments have been made until final acceptance thereof by the Owner.

g.    Clark may withhold amounts otherwise due under this Subcontract or any other agreement between the parties to cover Clark's reasonable estimate of any costs or liability Clark has incurred or may incur for which Subcontractor may be responsible under this Subcontract or any other agreement between the parties. For purposes of this paragraph 4g, the phrase "any other agreement between the parties" shall be deemed to include any agreement between Subcontractor and Clark or any joint venture or other entity in which Clark has an ownership interest. Appropriate adjustments to withholdings shall be made when the exact amounts owed are determined.

h.    Final payment, subject to withholdings permitted hereunder, shall not be due until after the last of the following to occur: after Subcontractor's work has been completed and approved by the Owner, the entire Project is complete, all final payment prerequisites under the Contract Documents have been satisfied, satisfactory proof of payment of all amounts owed by Subcontractor in connection with this Subcontract has been provided, Article 13. has been complied with, and Clark has been paid in full for the entire Project.

i.    Subcontractor shall cooperate fully with Clark in securing payment to Clark by the Owner including but not limited to providing such supporting documentation as the Owner or Clark may require.

j.    At any time all monies due Clark from the Owner are not paid, Clark shall, in its sole discretion, apportion the nonpayment equitably and reduce the payments otherwise due Subcontractor accordingly. Such reductions shall continue until Clark is paid all monies due it, provided however, if the withholdings do not relate to Subcontractor's work, Subcontractor shall be paid in full when Clark's right to recover from the Owner is finally determined or expires. Subcontractor acknowledges that this Article 4.j. establishes a reasonable time for payment.

k.    Neither partial nor final payment shall constitute or imply acceptance of work or materials.

5.  <u>Subcontractor's Investigations and Representations</u>

Subcontractor represents that it is fully qualified to perform this Subcontract, and acknowledges that, prior to the execution of this Subcontract, it has (a) by its own independent investigation ascertained (i) the work required by this Subcontract, (ii) the conditions involved in performing the work, and (iii) the obligations of this Subcontract and the Contract Documents; and (b) verified all information furnished by Clark or others satisfying itself as to the correctness and accuracy of that information. Any failure by Subcontractor to investigate independently and become fully informed will not relieve Subcontractor from its responsibilities hereunder.

6.  <u>Subcontractor's Liability</u>

a.    Subcontractor hereby assumes the entire responsibility and liability for all work, supervision, labor and materials provided hereunder, whether or not erected in place, and for all plant, scaffolding, tools, equipment, supplies and other things provided by Subcontractor until final acceptance of work by the Owner. In the event of any loss, damage or destruction thereof from any cause, Subcontractor shall be liable therefor, and shall repair, rebuild and make good said loss, damage or destruction at Subcontractor's cost.

b.    Subcontractor shall be liable to Clark for all costs Clark incurs as a result of Subcontractor's failure to perform this Subcontract in accordance with its terms. Subcontractor's failure to perform shall include the failure of its lower-tier subcontractors to perform. Subcontractor's liability shall include but not be limited to (1) damages and other delay costs payable by Clark to the Owner; (2) Clark's increased costs of performance, such as extended overhead and increased performance costs resulting from Subcontractor-caused delays or improper Subcontractor work; (3) warranty and rework costs; (4) liability to third parties; (5) excess reprocurement costs; (6) consultants' fees; and (7) attorneys' fees and related costs.

c.    If any person (including employees of Subcontractor) suffers injury or death or any property is damaged, lost or destroyed, as a result, in whole or in part, of Subcontractor's acts or omissions, whether or not involving negligence of Subcontractor, his employees, agents or lower-tier subcontractors, Subcontractor assumes the liability therefor and shall indemnify and hold harmless therefrom the Owner and Clark and their agents, servants, employees and sureties. With respect to any action involving Subcontractor's acts or omissions, (i) Subcontractor shall at its own expense defend Clark and all other indemnified parties, and (ii) Subcontractor shall pay all costs and expenses, including attorneys' fees, of, and satisfy all judgments entered against, Clark and all other indemnified parties. Nothing herein shall preclude Clark from participating in any such defense. Subcontractor's assumption of liability herein is in addition to assumption of all liabilities on account of or in any way related to Subcontractor's work which Clark has assumed under the Contract Documents or under agreements with third parties who may be affected by construction of the Project.

d.    In the event that Subcontractor or any of its agents, employees, suppliers, or lower-tier subcontractors utilize any machinery, equipment, tools, scaffolding, hoists, lifts or similar items belonging to or under the control of Clark, Subcontractor shall be liable to Clark for any loss or damage (including personal injury or death) which may arise from such use, except where such loss or damage shall be due solely to the negligence of Clark employees operating Clark-owned or Clark-leased equipment.

e.    Subcontractor's assumption of liability is independent from, and not limited in any manner by, the Subcontractor's insurance coverage obtained pursuant to Article 7., or otherwise.  All amounts owed by Subcontractor to Clark as a result of the liability provisions of this Subcontract shall be paid upon demand.

f.    Subcontractor's liability for Clark's costs under this Article 6., and under Articles 4., 10., 14., 22., and 23. shall include a 10% markup on the costs set forth therein.  This markup is not a penalty but is established as liquidated damages to compensate Clark for its additional costs not readily ascertainable and or to allow Clark a reasonable profit on work which Clark must perform as a result of Subcontractor's failure to perform properly.

g.    The Subcontract price includes one hundred dollars ($100.00) as specific consideration for indemnification under this Subcontract.

7.  Subcontractor's Insurance

a.    Prior to commencing the work, Subcontractor shall procure, with Clark, the Owner and such other parties as are required by Clark and/or the Contract Documents as additional insured parties on a primary basis, and thereafter maintain, at its own expense, until expiration of Subcontractor's obligations under the Subcontract, insurance coverage from insurers acceptable to Clark in such amounts and in such form as required by Exhibit E.

b.    Subcontractor waives all rights of recovery against Clark, the Owner, and such other parties as are required by Clark and/or the Contract Documents, for losses within the scope of Subcontractor's insurance.

c.    Upon request, Subcontractor shall provide Clark with certified copies of insurance policies required by Article 7.a.

8.  Time of Performance

a.    Subcontractor will proceed with the work in a prompt and diligent manner, in accordance with Clark's schedules as reasonably amended from time to time.  Subcontractor shall be liable to Clark for failure to adhere to Clark's schedules including amendments even if such schedules differ from schedules set forth in the Contract Documents or the time of completion called for by the Contract Documents.  TIME IS OF THE ESSENCE.

b.    If requested by Clark, Subcontractor shall submit detailed schedules for performance of the Subcontract, in a form acceptable to Clark, which shall comply with all scheduling requirements of the Contract Documents and of paragraph a. above.  Clark may from time to time, at its sole discretion, direct Subcontractor to make reasonable modifications and revisions in such schedules.

c.    Subcontractor will coordinate its work with the work of Clark, other subcontractors, and the Owner's other contractors, if any, so no delays or interference will occur in completion of any part or all of the Project.

d.    Subcontractor shall be entitled to additional compensation for compliance with schedule amendments or damages for delay only to the extent the Contract Documents entitle Clark to damages or to a contract adjustment increasing the price or Guaranteed Maximum Cost of the contract between Clark and Owner.

9.  Changes

a.    Clark may, at any time, unilaterally or by agreement with Subcontractor, without notice to the sureties, make changes in the work covered by this Subcontract.  Any unilateral order or agreement under this Article 9.a. shall be in writing.  Subcontractor shall perform the work as changed without delay.

b.    Subcontractor shall submit to Clark any requests or claims for adjustment in the price, schedule or other provisions of the Subcontract for changes directed by the Owner, as a result of deficiencies or discrepancies in the Contract Documents, or for circumstances otherwise permitted by the Contract Documents.  Said requests or claims shall be submitted in writing by Subcontractor in time to allow Clark to comply with the applicable provisions of the Contract Documents.  Clark shall process said requests or claims in the manner provided by and according to the provisions of the Contract Documents so as to protect the interest of Subcontractor and others including Clark.  Subcontractor adjustments shall be made only to the extent that Clark is entitled to relief from or must grant relief to the Owner.  Further, each Subcontract adjustment shall be equal only to Subcontractor's allocable share of any adjustment in Clark's contract with the Owner.  Subcontractor's allocable share shall be determined by Clark, after allowance of Clark's normal overhead and profit on any recovery and Clark's expense of recovery, by making a reasonable apportionment, if applicable, between Subcontractor, Clark and other subcontractors or persons with interests in the adjustment.  This paragraph shall also cover other equitable adjustments or other relief allowed by the Contract Documents.

c.    Payment on account of pending changes made by the Owner shall be made only if Clark receives such payment from the Owner for Subcontractor's changed work.  Each payment to Subcontractor on account of pending change orders shall be equal to Subcontractor's allocable share of Clark's payment from the Owner for the pending change as determined by Clark.  Amounts paid on account of pending changes are provisional and not an admission of liability and shall be repaid to Clark on demand whenever Clark determines there has been an overpayment.

d.    For changes ordered by Clark independent of the Owner or the Contract Documents, Subcontractor shall be entitled to equitable adjustment in the Subcontract price.  If Subcontractor considers any action or inaction by Clark other than a formal change order to be a change, it shall so notify Clark within three (3) days of said action or inaction and seek a confirmation from Clark.  Failure to comply with said confirmation procedure shall constitute a waiver of the right to compensation for the action or inaction.

e.    Subcontractor shall within seven (7) days of a Clark request submit a reasonable price quotation for proposed changes.  If Subcontractor does not and Clark is required to submit a price quotation to the Owner which includes a proposed change to Subcontractor's work, Clark shall use its best estimate of the proposed change as it affects the Subcontract in its quotation to the Owner, which estimate shall be the maximum equitable adjustment due to Subcontractor.

10.  Subcontractor's Failure to Perform

a.  If, in the opinion of Clark, Subcontractor shall at any time (1) refuse or fail to provide sufficient properly skilled workers, adequate supervision or material of the proper quality, (2) fail in any material respect to prosecute the work according to Clark's current schedule, (3) cause, by any action or omission, the stoppage or delay of or interference with the work of Clark or of any other contractor or subcontractor, (4) fail to comply with any provision of this Subcontract or the Contract Documents, (5) make a general assignment for the benefit of its creditors, (6) have a receiver appointed, or (7) become insolvent, then, after serving three (3) days' written notice, unless the condition specified in such notice shall have been eliminated within such three (3) days, Clark, at its option, without voiding the other provisions of this Subcontract and without notice to the sureties, may (i) take such steps as are necessary to overcome the condition, in which case the Subcontractor shall be liable to Clark for the cost thereof, (ii) terminate for default Subcontractor's performance of all or a part of the Subcontract work, or (iii) obtain specific performance or interlocutory mandatory injunctive relief requiring performance of Subcontractor's obligations hereunder, it being agreed by Subcontractor that such relief may be necessary to avoid irreparable harm to Clark and/or the Owner.  In the event of termination for default, Clark may, at its option, (a) enter on the premises and take possession, for the purpose of completing the work, of all materials and equipment of Subcontractor, (b) take assignment of any or all of Subcontractor's subcontracts, and/or (c) either itself or through others complete the work by whatever method Clark may deem expedient.  In case of termination for default, Subcontractor shall not be entitled to receive any further payment until the work shall be fully completed and accepted by the Owner and payment in full made by the Owner.  At such time, if the unpaid balance of the price to be paid shall exceed the expense incurred by Clark including overhead and profit, such excess shall be paid by Clark to Subcontractor.  If such amount shall exceed such unpaid balance, the Subcontractor shall pay Clark the difference on demand.

b.  If Clark wrongfully exercises its option under Article 10.a.(i), that action shall be treated as a deductive change.  If Clark wrongfully exercises its option under Article 10.a.(ii), that termination for default shall be considered a termination for Clark's convenience and Subcontractor shall be entitled to the applicable compensation provided in Article 16.  Subcontractor's remedies under this Article 10.b. shall be exclusive.  Nothing herein shall bar withholdings by Clark permitted by other provisions of this Subcontract.

11.  Settlement of Disputes

a.  In the event of any dispute involving the work performed or to be performed, Clark shall issue a decision which shall be followed by Subcontractor, without interruption, deficiency, or delay.  If Subcontractor does not agree with such decision, Subcontractor may make a claim under Article 9. and the matter shall be resolved as set forth in Article 11.b. or 11.c. as applicable.  If the Subcontractor prevails, Subcontractor's sole remedy shall be an equitable adjustment determined as provided in Article 11.b. or 11.c. as applicable.  In addition to notice required by Article 9.d. or the Contract Documents, notification of any claim for the equitable adjustment must be asserted in writing not later than ten (10) days after Subcontractor's knowledge of the claim, and if Article 11.b. is applicable, within sufficient time to allow Clark to give notice to the Owner under the Contract Documents.

b.  In case of any dispute between Clark and Subcontractor, in any way relating to or arising from any act or omission of the Owner or involving the Contract Documents, Subcontractor agrees to be bound to Clark to the same extent that Clark is bound to the Owner, by the terms of the Contract Documents, and by any and all preliminary and final decisions or determinations made thereunder by the party, board or court so authorized in the Contract Documents or by law, whether or not Subcontractor is a party to such proceedings.  In case of such dispute, Subcontractor will comply with all provisions of the Contract Documents allowing a reasonable time for Clark to analyze and forward to the Owner any required communications or documentation.  Clark will, at its option, (1) present to the Owner, in Clark's name, or (2) authorize Subcontractor to present to the Owner, in Clark's name, all of Subcontractor's claims and answer the Owner's claims involving Subcontractor's work, whenever Clark is permitted to do so by the terms of the Contract Documents.  Clark will further invoke on behalf of Subcontractor, or allow Subcontractor to invoke, those provisions in the Contract Documents for determining disputes.  Nothing herein shall require Clark to certify a claim under a government contract when it cannot do so in good faith.  If such dispute is prosecuted or defended by Clark, Subcontractor, at its own expense, agrees to furnish all documents, statements, witnesses, and other information required by Clark and to pay or reimburse Clark for all costs incurred by Clark in connection with the dispute including attorneys' fees.  The Subcontract price shall be adjusted by Subcontractor's allocable share determined in accordance with Article 9. hereof.

c.  To the extent not resolved under Article 11.b. above, any dispute between Clark and Subcontractor shall, at Clark's sole option, be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association.  If Clark elects to arbitrate, then the arbitration shall be in Montgomery County, Maryland.  The foregoing agreement to arbitrate shall be specifically enforceable in any court of competent jurisdiction.  Upon its request, Clark shall be entitled to consolidation or joinder of any arbitration involving Subcontractor with related arbitrations involving other parties.  The award rendered by the arbitrators shall be final and judgment may be entered upon it in accordance with applicable law in any court of competent jurisdiction.  If Clark notifies Subcontractor that Clark contends any arbitration or lawsuit brought under this Article 11.c. involves a controversy within the scope of Article 11.b., the dispute process shall be stayed until the procedures under Article 11.b. are completed.  In the event of any lawsuit under this clause, the Courts of Maryland shall have sole and exclusive jurisdiction.  DUE TO THE SPECIALIZED NATURE OF CONSTRUCTION LITIGATION, EACH PARTY HEREBY WAIVES ITS RIGHT TO A TRIAL BY JURY.  Subcontractor hereby consents to jurisdiction and venue in Maryland.

12.  Warranty

Subcontractor warrants its work hereunder to Clark on the same terms, and for the same period, as Clark warrants the work to the Owner under the Contract Documents; and, with respect to Subcontractor's work, Subcontractor shall assume all warranty obligations and responsibilities of Clark under the Contract Documents.

13.  Liens

a.  In the event that liens are filed by anyone in relation to the labor and/or material furnished pursuant to this Subcontract, Subcontractor agrees to have the same discharged, by posting a bond with the appropriate authorities, or otherwise, within three (3) days of notice.  In the event such lien is not so discharged, Clark may discharge the lien itself holding Subcontractor responsible for all costs and obligations incurred.

b.  Subcontractor shall, as part of each request for partial payment other than the initial request, furnish claim releases and lien waivers with respect to all work performed and materials supplied through the date of the immediately preceding request for partial payment.

c.  Prior to final payment, Subcontractor shall provide to Clark a release of its liens and claims and all liens and claims of all persons furnishing labor and/or materials for the performance of this Subcontract, and satisfactory evidence that there are no other liens or claims whatsoever outstanding against the work relating to this Subcontract.

14. Inspection and Acceptance

a.    Subcontractor shall provide appropriate facilities at all reasonable times for inspection by Clark or the Owner of the work and materials provided under this Subcontract, whether at the Project site or any other place where such work or materials may be in preparation, manufacture, storage or installation. Subcontractor shall promptly replace or correct any work or materials which Clark or the Owner shall reject as failing to conform to the requirements of this Subcontract. If Subcontractor does not do so within a reasonable time, Clark shall have the right to do so and Subcontractor shall be liable to Clark for the cost thereof. If, in the opinion of Clark, it is not expedient to correct or replace all or any part of rejected work or materials, then Clark, at its option, may deduct from the payments due, or to become due, to Subcontractor, such amount as, in Clark's reasonable judgment, will represent (i) the difference between the fair value of the rejected work and materials and the value thereof if it complied with this Subcontract, or (ii) the cost of correction, whichever Clark determines is more appropriate.

b.    Subcontractor's remedy for wrongful rejection of work pursuant to Article 14.a. shall be limited to Clark's remedy under the Contract Documents if rejection is by the Owner or by Clark at request of the Owner. Clark shall be liable for any increased direct costs caused by its wrongful rejection of work if the Owner was not involved in said rejection.

c.    The work shall be accepted according to the terms of the Contract Documents. However, unless otherwise agreed in writing, entrance and use by the Owner or Clark, shall not constitute acceptance of the work.

15. Inconsistencies and Omissions

Should inconsistencies or omissions appear in the Contract Documents, it shall be the duty of Subcontractor to timely notify Clark in writing. Upon receipt of said notice, Clark shall instruct Subcontractor as to the measures to be taken, and Subcontractor shall comply with Clark's instructions. Nothing herein shall bar Subcontractor's right to seek adjustment under Article 9.b. if allowable under the Contract Documents.

16. Termination for Convenience

Clark shall have the right to terminate for convenience Subcontractor's performance of all or a part of the Subcontract work by providing Subcontractor with a written notice of termination for convenience, to be effective upon receipt by Subcontractor. If there has been a termination of Clark's contract with the Owner, the Subcontractor shall be paid the amount due from the Owner for its work, as provided in the Contract Documents, after payment therefor by the Owner to Clark. If Clark's contract has not been terminated, Subcontractor shall be paid the reasonable value of work performed by Subcontractor prior to termination plus reasonable direct close-out costs but in no event shall Subcontractor be entitled to unabsorbed overhead or anticipatory profit. If no work has been performed by Subcontractor at the time of termination, Subcontractor shall be paid the sum of $100.00 for its undertaking an obligation to perform.

17. Approvals

a.    Subcontractor warrants and agrees that all requisite approvals from the Owner as to its eligibility to serve as a subcontractor and the approvals of all materials and performance of the work as required by the Contract Documents are obtainable.

b.    Subcontractor shall deliver to Clark copies of shop drawings, cuts, samples, material lists and other submissions required by Clark or the Contract Documents within sufficient time so as not to delay performance of the Project or within sufficient time for Clark to submit the same within the time stated in the Contract Documents, whichever is earlier. Submissions shall be in strict accordance with the Contract Documents, provided however, if Subcontractor wishes to propose a deviation from the Contract Documents, such deviation shall be clearly identified on the submission and accompanied by a letter describing such deviation in detail and the effect, if any, on Subcontractor's work and time of performance. Requested deviations will be allowed only when specific written approval referencing the deviation is given to Subcontractor. No general approval granted by Clark or the Owner shall relieve Subcontractor from complying with the Contract Documents.

c.    Clark's review of shop drawings, cuts, samples, material lists and other submissions shall not be construed as a complete check or approval nor shall it relieve the Subcontractor from responsibility for errors of any sort therein, or from the necessity of furnishing any work required by the Contract Documents which may have been omitted from the shop drawings, cuts, samples, material lists or other submissions.

18. Cleanup

Subcontractor shall clean its work and remove all debris resulting from its work in a manner that will not impede either the progress of the Project or of other trades. Clark shall have the right to perform cleanup itself and charge Subcontractor the reasonable cost thereof including an allocation of the cost of cleanup not identifiable to any source.

19. Assignment and Subcontracting

a.    Subcontractor shall not assign or transfer this Subcontract, or funds due hereunder, without the prior written consent of Subcontractor's surety and Clark. Clark shall not unreasonably withhold its consent to the assignment of funds due hereunder. Lower-tier subcontracts are subject to the provisions of this Subcontract, and Subcontractor shall insert in Subcontractor's subcontracts all provisions required by the Contract Documents or necessary to enable Subcontractor to comply with the terms hereof. Subcontracting by Subcontractor shall not abrogate any obligation of Subcontractor under this Subcontract.

b.    Subcontractor, by execution of this Subcontract, contingently assigns to Clark all Subcontractor's subcontracts. The assignment of each of Subcontractor's subcontracts shall take effect only upon Subcontractor's termination for default under Article 10.a. and Clark's affirmative acceptance of the assignment of the specific subcontract by written notice to Subcontractor and Subcontractor's subcontractor. Clark shall have no liability to any of Subcontractor's subcontractors unless and until Clark affirmatively accepts the assignment as provided above.

20. Patents and Royalties

Except as otherwise provided by the Contract Documents, Subcontractor shall pay all royalties and license fees which may be due with respect to its work. Subcontractor shall defend all suits or claims for infringement of any patent rights that may be brought against Clark or the Owner arising out of its work, and shall be

liable to Clark and the Owner for all loss, including all costs and expenses, on account thereof.

21.  Taxes and Permits

a.  Except as otherwise provided by the Contract Documents, Subcontractor agrees to pay and comply with and hold Clark harmless against the payment of all Federal, state and local contributions, taxes, duties or premiums arising out of the performance of this Subcontract, and all sales, use or other duties or taxes of whatever nature levied or assessed against the Owner, Clark, or Subcontractor arising out of this Subcontract, including any interest or penalties. Subcontractor waives any and all claims for additional compensation because of any new duties or taxes or any increase in the aforementioned duties or taxes unless payment therefor is specifically provided for in the Contract Documents.

b.  Subcontractor shall obtain and pay for all permits, licenses, fees and certificates of inspection necessary for the prosecution and completion of work. Subcontractor shall arrange for all necessary inspections and approvals by public officials.

22.  Laws, Regulations and Ordinances

a.  Subcontractor shall be bound by, and, at its own cost, shall comply with all Federal, state and local laws, codes, ordinances and regulations applicable to this Subcontract and the performance of the work hereunder whether by reason of general law or by reason of provisions in the Contract Documents. Subcontractor and all lower-tier subcontractors shall be duly licensed to operate under the law of the applicable jurisdictions.

b.  Specifically and without limitation, Subcontractor and all employees and agents thereof shall comply with the applicable requirements issued pursuant to the Occupational Safety and Health Act of 1970, as amended, all other applicable health and safety laws and regulations, and all laws and regulations applicable to the hiring of aliens.

c.  Subcontractor shall be liable to Clark and the Owner for all loss, cost and expense attributable to any acts of commission or omission by Subcontractor, its employees and agents, and lower-tier subcontractors resulting from failure to comply with any Federal, state or local laws, codes, ordinances or regulations including, but not limited to, any fines, penalties or corrective measures.

d.  Unless otherwise provided in the Contract Documents, the terms and conditions of this Subcontract shall be interpreted in accordance with the laws of the jurisdiction where the Project is located.

23.  Safety

a.  Subcontractor's safety and health program for the Project shall incorporate, as a minimum, all of the policies and procedures of Clark's Project Safety and Health Program. Subcontractor acknowledges that it has an obligation to perform its work using safe and healthful methods and to comply with its company safety and health program and hazard communication (HAZCOM) program for the Project, the Project Documents, the Subcontract, the Occupational Safety and Health Administration standards, and all other federal, state, and local codes, laws, and regulations.

b.  Subcontractor accepts responsibility for the management and implementation of its company safety and health program and HAZCOM program for this Project and shall ensure that its employees, subcontractors and suppliers, regardless of tier, know, understand, properly implement and are held accountable for the complete project safety and health program requirements. Subcontractor assumes full responsibility to provide  and maintain, within its scope of work, a safe and healthful workplace for its employees, as well as for the benefit of all contractors, fellow workers and the general public. Subcontractor agrees to assume the obligation to notify Clark of all hazards discovered that it does not control and did not create.

c.  Subcontractor shall be liable to Clark for any additional costs Clark incurs as a result of Subcontractor's failure to operate safely. Clark may conduct safety inspections from time to time. Such inspections shall not relieve Subcontractor from its obligations to adhere to safety requirements nor shall such inspections create any Clark liability. Copies of Clark's Safety and Health Program will be made available to Subcontractor upon request.

24.  Labor

a.  Should any workers performing work covered by this Subcontract engage in any strike or other work stoppage or cease to work due to picketing or a labor dispute of any kind, such circumstances shall, notwithstanding any provision of the Contract Documents, be deemed a failure to perform by Subcontractor and Clark's rights shall be governed by Articles 6 and 10 of the Subcontract Agreement.

b.  Subcontractor understands that Clark, other Subcontractors and/or other contractors of the Owner may employ both Union and Non-Union workers on the project. If required by the Contract Documents or specified in an Exhibit to this Subcontract, Subcontractor agrees to employ union labor.

c.  Subcontractor agrees, in the event of a labor dispute, to use all lawful means available under law, any applicable union agreement or project agreement to cure the dispute as quickly as possible so as to cause the minimum delay to the project. In the event the Subcontractor fails to act expeditiously, Clark may exercise any rights it may have under the law and the Subcontractor will indemnify Clark for any cost incurred.

25.  Equal Opportunity

a.  In connection with the performance of work under this Subcontract, Subcontractor agrees not to discriminate against any employee or applicant for employment because of race, religion, sex, color or national origin. The aforesaid provision shall include, but not be limited to, the following: employment, upgrading, demotion or transfer; recruitment advertising; layoff or termination; rates of pay or other forms of compensation; and selection for training, including apprenticeship. Subcontractor agrees to post hereafter, in conspicuous places, available for employees and applicants for employment, notices, prepared by Subcontractor, and approved by the government when required, setting forth the provisions of this Article 25.

b.  Subcontractor shall permit access to its books, records and accounts by representatives of Clark or the Owner for purposes of investigation to ascertain compliance with the provisions of this Article 25.

c.    In the event of Subcontractor's noncompliance with the equal opportunity provisions of this Subcontract, this Subcontract may be terminated for default.

d.    Subcontractor shall include the provisions of this Article 25. in Subcontractor's subcontracts.  The requirements of this Article 25., shall be in addition to any Equal Opportunity provisions of the Contract Documents.

26.  Information Required by Owner

In addition to the information to be provided by Subcontractor pursuant to other provisions of this Subcontract, Subcontractor hereby agrees to provide, at no additional cost to Clark, and in a prompt and timely fashion so as not to disrupt the performance of this Subcontract or the contract between Clark and the Owner, any and all additional information relating to this Subcontract which is required either by the Contract Documents or by law.

27.  Privity

Until Subcontractor's obligations under this Subcontract are completely fulfilled, Subcontractor agrees not to perform any work directly for the Owner or any of its tenants or deal directly with the Owner's representatives in connection with the Project, unless otherwise directed in writing by Clark.  All work for this Project performed by Subcontractor shall be processed and handled exclusively by Clark.

28.  Notices

All notices shall be addressed to the parties at the addresses set out herein, and shall be considered as delivered when postmarked if dispatched by registered or certified mail, when confirmed if sent by telegram or telecopy, when signed for when delivered by hand, and when received in all other cases.

29.  Severability and Waiver

The partial or complete invalidity of any one or more provisions of this Subcontract shall not affect the validity or continuing force and effect of any other provision.  If any provision is invalid, in whole or in part, the provision shall be considered reformed to reflect the intent thereof to the greatest extent possible consistent with law.  The failure of either party to insist, in any one or more instances, upon the performance of any of the terms, covenants, or conditions of this Subcontract, or to exercise any right herein, shall not be construed as a waiver or relinquishment of such term, covenant, condition or right as respects further performance.

30.  Interpretation of Contract Documents

a.    It is the intention of the parties that all terms of this Subcontract are to be considered as complementary.  However, in the event that such an interpretation is not possible, the order of precedence of the documents forming this Subcontract shall be (1) modifications of any documents forming part of this Subcontract; (2) this Subcontract, unless the Contract Documents impose a higher standard or greater requirement on Subcontractor, in which case the Contract Documents; (3) the Contract Documents, unless the provisions of (2) apply.

b.    In the event of a conflict between or among modifications, the later in date shall prevail; in the event of a conflict between or among the terms of this Subcontract, the higher standard or greater requirement for Subcontractor shall prevail; and in the event of a conflict between or among the terms of the Contract Documents, the higher standard or greater requirement for Subcontractor shall prevail.

c.    Except as otherwise provided, all references herein to days shall be to calendar days.

d.    The term "Subcontractor's subcontractor" shall mean any subcontractor, vendor or materialman who is supplying material or performing work in connection with the Subcontract and who has a direct contractual relationship with Subcontractor.  The term "lower-tier subcontractor" shall mean any subcontractor, vendor or materialman at any tier supplying material or performing work in connection with the Subcontract.  The term "subcontract" when referencing contractual arrangements between Subcontractor and Subcontractor's subcontractor shall include purchase orders and contracts for construction, materials and/or services relating to the Project.

e.    Termination under Articles 10. or 16. shall not relieve Subcontractor from obligations in connection with work performed prior to termination or abrogate any provisions herein dealing with resolution of disputes.

31.  Advertising - Signs

Subcontractor, lower-tier subcontractors, and their employees shall not take photographs of the work on site, publish or display advertising matter of any description relating to the Project, or display signs at or near the Project without first obtaining the written consent of Clark and the Owner.

32.  Fitness for Duty Policy

a.    Subcontractor shall adopt Clark's Fitness for Duty Policy or a substantially similar policy for its own employees, agents and representatives who come onto the job site and shall require its subcontractors and suppliers of any tier who come onto the job site to do likewise.

b.    If Subcontractor, or any who comes onto the job site under an employment or a direct or indirect contractual arrangement with Subcontractor, fails to enforce the Clark Fitness for Duty Policy or a substantially similar policy, Clark reserves the right to bar such party from the job site.  Any resulting damage (including damage for delay) will be the responsibility of Subcontractor.

c.    Subcontractor certifies that all employees who will work on the Project, as a minimum, passed a pre-hire drug test consistent with the test required by Clark's Fitness for Duty Policy.  Copies of Clark's Fitness for Duty Policy will be made available to Subcontractor upon request.

33. <u>Additional Provisions</u>

   See Exhibits D, F, G and I for additional conditions of this Subcontract.

(this space left intentionally blank)

IN WITNESS WHEREOF, the parties, by their duly authorized representatives, have hereunto executed this Subcontract, on the day and year above written

PROSPECT WATERPROOFING COMPANY
(Subcontractor)

By: _____  10/30/03

Print name: _George E. Barlow_   Date

Title: _V P_

Attest

Clark Quincy Park, LLC
(Clark)

_____      11/03/03

By: C. Neal Fleming, Jr.          Date
    Manager

Attest



QUINCY PARK CONDOMINIUM PROJECT
WASHINGTON, D.C.



**EXHIBIT A**
(8/13/03)

1.  Owner Contractor Agreement dated June 23, 2003

2.  Miscellaneous Documents:

| Description | Source |
|---|---|
| Geotechnical Engineering Report | Schnabel Engineering Assoc's. Inc. |

3.  Specifications prepared by Esocoff & Associates:

| SECTION | TITLE | DATE | NOTES |
|---|---|---|---|
| **Division 1 - General Requirements** | | | |
| 01100 | Summary | May 1, 2003 | Issued for Construction |
| 01250 | Contract Modification Procedures | May 1, 2003 | Issued for Construction |
| 01290 | Payment Procedures | May 1, 2003 | Issued for Construction |
| 01310 | Project Management and Coordination | May 1, 2003 | Issued for Construction |
| 01320 | Construction Progress Documentation | May 1, 2003 | Issued for Construction |
| 01330 | Submittal Procedures | May 1, 2003 | Issued for Construction |
| 01420 | References | May 1, 2003 | Issued for Construction |
| 01430 | Quality Assurance | May 1, 2003 | Issued for Construction |
| 01450 | Quality Control | May 1, 2003 | Issued for Construction |
| 01510 | Temporary Utilities | May 1, 2003 | Issued for Construction |
| 01520 | Construction Facilities | May 1, 2003 | Issued for Construction |
| 01540 | Construction Aids | May 1, 2003 | Issued for Construction |
| 01550 | Vehicular Access and Parking | May 1, 2003 | Issued for Construction |
| 01560 | Temporary Barriers and Enclosures | May 1, 2003 | Issued for Construction |
| 01570 | Temporary Controls | May 1, 2003 | Issued for Construction |
| 01580 | Project Identification | May 1, 2003 | Issued for Construction |
| 01610 | Product Requirements and Options | May 1, 2003 | Issued for Construction |
| 01630 | Product Substitution Procedures | May 1, 2003 | Issued for Construction |
| | Substitution Request Form | May 1, 2003 | Issued for Construction |
| 01650 | Product Delivery, Storage and Handling | May 1, 2003 | Issued for Construction |
| 01720 | Field Engineering | May 1, 2003 | Issued for Construction |
| 01733 | Application, Installation and Erection | May 1, 2003 | Issued for Construction |
| 01736 | Cutting and Patching | May 1, 2003 | Issued for Construction |
| 01740 | Cleaning | May 1, 2003 | Issued for Construction |
| 01760 | Protecting Installed Construction | May 1, 2003 | Issued for Construction |
| 01770 | Project Closeout | May 1, 2003 | Issued for Construction |
| 01780 | Closeout Submittals | May 1, 2003 | Issued for Construction |
| 01785 | Product Warranties | May 1, 2003 | Issued for Construction |
| **Division 2 Site - Construction** | | | |
| 02111 | Existing Tree Protection | May 1, 2003 | Issued for Construction |



QUINCY PARK CO. ...OMINIUM PROJECT
WASHINGTON, D.C.

## EXHIBIT A
### (8/13/03)

| | | | |
|---|---|---|---|
| 02221 | Building Demolition | May 8, 2003 | Issued for Construction |
| 02230 | Site Clearing | May 8, 2003 | Issued for Construction |
| 02240 | Dewatering | May 8, 2003 | Issued for Construction |
| 02300 | Earthwork | May 8, 2003 | Issued for Construction |
| 02510 | Water Distribution | May 8, 2003 | Issued for Construction |
| 02530 | Sanitary Sewerage | May 8, 2003 | Issued for Construction |
| 02630 | Storm Drainage | May 8, 2003 | Issued for Construction |
| 02741 | Hot-Mix Asphalt Paving | May 8, 2003 | Issued for Construction |
| 02751 | Cement Concrete Paving | May 8, 2003 | Issued for Construction |
| 02760 | Pavement Marking | May 1, 2003 | Issued for Construction |
| 02764 | Pavement Joint Sealants | May 8, 2003 | Issued for Construction |
| 02810 | Irrigation System | July 18, 2003 | Issued for Construction |
| 02821 | Chain-Link Fences and Gates | May 8, 2003 | Issued for Construction |
| 02950 | Planting | May 1, 2003 | Issued for Construction |

**Division 3 - Concrete**

| | | | |
|---|---|---|---|
| 03100 | Concrete Forms and Accessories | May 1, 2003 | Issued for Construction |
| 03200 | Concrete Reinforcement | May 1, 2003 | Issued for Construction |
| 03300 | Cast-In-Place Concrete | May 1, 2003 | Issued for Construction |
| 03380 | Post-Tensioned Concrete | May 1, 2003 | Issued for Construction |
| 03450 | Architectural Precast Concrete | May 1, 2003 | Issued for Construction |

**Division 4 - Masonry**

| | | | |
|---|---|---|---|
| 04100 | Mortar and Grout | May 1, 2003 | Issued for Construction |
| 04200 | Unit Masonry | May 1, 2003 | Issued for Construction |
| 04270 | Glass Unit Masonry | May 1, 2003 | Issued for Construction |
| 04850 | Stone Assemblies | May 1, 2003 | Issued for Construction |

**Division 5 - Metals**

| | | | |
|---|---|---|---|
| 05410 | Cold-Formed Metal Framing | May 1, 2003 | Issued for Construction |
| 05500 | Metal Fabrications | May 1, 2003 | Issued for Construction |
| 05520 | Handrails and Railings | May 1, 2003 | Issued for Construction |

**Division 6 - Wood And Plastics**

| | | | |
|---|---|---|---|
| 06100 | Rough Carpentry | May 1, 2003 | Issued for Construction |
| 06415 | Countertops | May 1, 2003 | Issued for Construction |
| 06420 | Flush Wood Paneling | May 1, 2003 | Issued for Construction |
| 06480 | Closet and Storage Shelving | May 1, 2003 | Issued for Construction |

**Division 7 - Thermal And Moisture Protection**

| | | | |
|---|---|---|---|
| 07110 | Damproofing | May 21, 2003 | Issued for Construction |
| 07140 | Fluid Applied Waterproofing | May 1, 2003 | Issued for Construction |
| 07160 | Cementitious Waterproofing | May 1, 2003 | Issued for Construction |



QUINCY PARK CONDOMINIUM PROJECT
WASHINGTON, D.C.

## EXHIBIT A
(8/13/03)

| | | | |
|---|---|---|---|
| 07170 | Bentonite Waterproofing | May 1, 2003 | Issued for Construction |
| 07180 | Traffic Toppings | May 1, 2003 | Issued for Construction |
| 07210 | Building Insulation | May 1, 2003 | Issued for Construction |
| 07560 | Fluid Applied Membrane Roofing | May 1, 2003 | Issued for Construction |
| 07620 | Sheet Metal Flashing and Trim | May 1, 2003 | Issued for Construction |
| 07720 | Roof Accessories | May 1, 2003 | Issued for Construction |
| 07730 | Roof-Top Equipment Screen | May 1, 2003 | Issued for Construction |
| 07840 | Firestopping | May 1, 2003 | Issued for Construction |
| 07920 | Joint Sealants | May 1, 2003 | Issued for Construction |

**Division 8 - Doors And Windows**

| | | | |
|---|---|---|---|
| 08110 | Steel Doors and Frames | May 1, 2003 | Issued for Construction |
| 08120 | Aluminum Terrace Doors | May 1, 2003 | Issued for Construction |
| 08210 | Flush Wood Doors | May 1, 2003 | Issued for Construction |
| 08215 | Stile and Rail Wood Doors | May 1, 2003 | Issued for Construction |
| 08250 | Pre-Hung Wood Doors | May 1, 2003 | Issued for Construction |
| 08310 | Access Doors | May 1, 2003 | Issued for Construction |
| 08330 | Overhead Coiling Doors | May 1, 2003 | Issued for Construction |
| 08410 | Aluminum-Framed Storefronts | May 1, 2003 | Issued for Construction |
| 08520 | Aluminum Windows | May 1, 2003 | Issued for Construction |
| 08710 | Door Hardware | May 1, 2003 | Issued for Construction |
| 08711 | Door Hardware Schedule | May 1, 2003 | Issued for Construction |
| 08810 | Glass | May 1, 2003 | Issued for Construction |

**Division 9 - Finishes**

| | | | |
|---|---|---|---|
| 09210 | Acoustical Plaster | May 1, 2003 | Issued for Construction |
| 09250 | Gypsum Board | May 1, 2003 | Issued for Construction |
| 09255 | Gypsum Sheathing | May 1, 2003 | Issued for Construction |
| 09300 | Tile | May 1, 2003 | Issued for Construction |
| 09510 | Acoustical Ceilings | May 1, 2003 | Issued for Construction |
| 09545 | Metal Panel Ceilings | May 1, 2003 | Issued for Construction |
| 09630 | Stone Flooring | May 1, 2003 | Issued for Construction |
| 09640 | Wood Flooring | May 1, 2003 | Issued for Construction |
| 09650 | Resilient Flooring and Base | May 1, 2003 | Issued for Construction |
| 09680 | Carpet | May 1, 2003 | Issued for Construction |
| 09910 | Paints | May 1, 2003 | Issued for Construction |
| 09970 | Coating Systems for Steel | May 1, 2003 | Issued for Construction |
| 09980 | Coatings for Concrete and Masonry | May 1, 2003 | Issued for Construction |

**Division 10 - Specialties**

| | | | |
|---|---|---|---|
| 10210 | Metal Wall Louvers | May 1, 2003 | Issued for Construction |
| 10520 | Fire Protection Specialties | May 1, 2003 | Issued for Construction |
| 10535 | Awnings | May 21, 2003 | Issued for Construction |



QUINCY PARK CO...OMINIUM PROJECT
WASHINGTON, D.C.

## EXHIBIT A
### (8/13/03)

| | | | |
|---|---|---|---|
| 10550 | Postal Specialties | May 1, 2003 | Issued for Construction |
| 10605 | Wire Mesh Partitions | May 1, 2003 | Issued for Construction |
| 10815 | Toilet and Bath Accessories | May 1, 2003 | Issued for Construction |
| 10825 | Shower Enclosures | May 1, 2003 | Issued for Construction |

**Division 11 - Equipment**

| | | | |
|---|---|---|---|
| 11015 | Window Washing System | May 1, 2003 | Issued for Construction |
| 11165 | Dock Bumpers | May 1, 2003 | Issued for Construction |
| 11170 | Trash Chutes | May 1, 2003 | Issued for Construction |

**Division 12 - Furnishings**

| | | | |
|---|---|---|---|
| 12320 | Manufactured Wood Casework | May 1, 2003 | Issued for Construction |
| 12480 | Walk-Off Mats | May 1, 2003 | Issued for Construction |

**Division 13 - Special Construction**

Not Used

**Division 14 - Conveying Systems prepared by: Lerch, & Associates Inc. Elevator Consulting Group**

| | | | |
|---|---|---|---|
| 14210 | Electric Traction Elevators | July 18, 2003 | Issued for Construction |

**Division 15 - Mechanical**

| | | | |
|---|---|---|---|
| 15010 | Mechanical General | July 18, 2003 | Issued for Construction |
| 15050 | Basic Materials and Methods, Mechanical | May 8, 2003 | Issued for Construction |
| 15180 | Insulation: Mechanical | May 8, 2003 | Issued for Construction |
| 15200 | Noise and Vibration Control | May 8, 2003 | Issued for Construction |
| 15400 | Plumbing | July 18, 2003 | Issued for Construction |
| 15500 | Automatic Sprinkler and Standpipe Fire Protection System | May 8, 2003 | Issued for Construction |
| 15600 | Refrigeration | May 8, 2003 | Issued for Construction |
| 15650 | Heating | May 8, 2003 | Issued for Construction |
| 15697 | Water Treatment | May 8, 2003 | Issued for Construction |
| 15800 | HVAC System | May 8, 2003 | Issued for Construction |
| 15900 | Automatic Control Systems | May 8, 2003 | Issued for Construction |
| 15925 | Building Automation System Energy Management System (EMS) | May 8, 2003 | Issued for Construction |
| 15950 | Air Balancing | May 8, 2003 | Issued for Construction |
| 15975 | Systems Demonstration (Commissioning) | May 8, 2003 | Issued for Construction |

**Division 16 - Electrical**

| | | | |
|---|---|---|---|
| 16010 | Electrical Work General | May 8, 2003 | Issued for Construction |
| 16050 | Electrical Basic Material and Method | July 18, 2003 | Issued for Construction |
| 16163 | Electrical Distribution Equipment | May 8, 2003 | Issued for Construction |
| 16210 | Emergency Generator | May 8, 2003 | Issued for Construction |



QUINCY PARK CONDOMINIUM PROJECT
WASHINGTON, D.C.

## EXHIBIT A
### (8/13/03)

| | | | |
|---|---|---|---|
| 16500 | Lighting | May 8, 2003 | Issued for Construction |
| 16721 | High-Rise Fire Alarm System | July 18, 2003 | Issued for Construction |

4.  Drawings prepared by Esocoff & Associates:

| DRAWING | TITLE | DATE | NOTES |
|---|---|---|---|
| **Title Sheet** | | | |
| T100 | Cover Sheet | July 18, 2003 | Issued for Construction |
| T101 | Code Data | July 18, 2003 | Issued for Construction |
| | | | |
| **Civil** | | | |
| C1 | Existing Conditions & Demolition Plan | July 18, 2003 | Issued for Construction |
| C2 | Construction Notes Drainage & Utilities Plan | July 18, 2003 | Issued for Construction |
| C3 | Sediment & Erosion Control Plan | July 18, 2003 | Issued for Construction |
| C4 | Sediment & Erosion Notes & Details | July 18, 2003 | Issued for Construction |
| C5 | Sand Filter Calculations | July 18, 2003 | Issued for Construction |
| C6 | Sand Filter Details | July 18, 2003 | Issued for Construction |
| C7 | Storm, Water & Sewer Profiles & Schedules | July 18, 2003 | Issued for Construction |
| C8 | Sanitary & Water Details & Utility Notes | July 18, 2003 | Issued for Construction |
| C9 | Sidewalk & Curb Details | July 18, 2003 | Issued for Construction |
| | | | |
| **Architectural** | | | |
| A101 | Site Plan | July 18, 2003 | Issued for Construction |
| A102 | Architectural Site Plan & Site Details | July 18, 2003 | Issued for Construction |
| A103 | Detailed Plan and Section | July 18, 2003 | Issued for Construction |
| A110 | Column Plan Segment 1 | July 18, 2003 | Issued for Construction |
| A111 | Column Plan Segment 2 | July 18, 2003 | Issued for Construction |
| A111a | Slab Edge Parking Level 1 & 2 | July 18, 2003 | Issued for Construction |
| A112 | Slab Edge Ground & Second Floors | July 18, 2003 | Issued for Construction |
| A113 | Slab Edge Third & Fourth Floors | July 18, 2003 | Issued for Construction |
| A114 | Slab Edge Fifth & Sixth Floors | July 18, 2003 | Issued for Construction |
| A115 | Slab Edge Seventh Thru Ninth Floors & Roof Levels | July 18, 2003 | Issued for Construction |
| A201 | Floor Plans Parking Levels 1 & 2 | July 18, 2003 | Issued for Construction |
| A202 | Floor Plans Ground & Second Floors | July 18, 2003 | Issued for Construction |
| A203 | Floor Plans Third & Fourth Floors | July 18, 2003 | Issued for Construction |
| A204 | Floor Plans Fifth Thru Ninth Floors | July 18, 2003 | Issued for Construction |
| A205 | Floor Plans Roof Levels | July 18, 2003 | Issued for Construction |
| A251 | Reflected Ceiling Plans Parking Level 1 & Ground Floor | July 18, 2003 | Issued for Construction |
| A252 | Reflected Ceiling Plans Second & Typical Floors | July 18, 2003 | Issued for Construction |
| A253 | Reflected Ceiling Plans Ninth Floor | July 18, 2003 | Issued for Construction |
| A301 | Building Elevations East & South | July 18, 2003 | Issued for Construction |
| A302 | Building Elevations West, North & Penthouse | July 18, 2003 | Issued for Construction |
| A311 | Building Sections A-A & B-B | July 18, 2003 | Issued for Construction |



QUINCY PARK CONDOMINIUM PROJECT
WASHINGTON, D.C.

## EXHIBIT A
### (8/13/03)

| A312 | Building Sections C-C & D-D | July 18, 2003 | Issued for Construction |
|---|---|---|---|
| A313 | Building Sections F-F | July 18, 2003 | Issued for Construction |
| A314 | Penthouse Sections | July 18, 2003 | Issued for Construction |
| A321 | Enlarged East Sections, Elevation & Plans Segment1 | July 18, 2003 | Issued for Construction |
| A322 | Enlarged East Sections, Elevation & Plans Segment2 | July 18, 2003 | Issued for Construction |
| A323 | Enlarged South Sections, Elevation & Plans | July 18, 2003 | Issued for Construction |
| A401 | 1/4" Ground Floor Plan | July 18, 2003 | Issued for Construction |
| A402 | 1/4" Typical Floor Plan | July 18, 2003 | Issued for Construction |
| A501 | Kitchen Plans and Elevations | July 18, 2003 | Issued for Construction |
| A510 | Bathroom Details | July 18, 2003 | Issued for Construction |
| A511 | Bathroom Plans and Elevations | July 18, 2003 | Issued for Construction |
| A512 | Bathroom Plans and Elevations | July 18, 2003 | Issued for Construction |
| A520 | Misc. Interior Details | July 18, 2003 | Issued for Construction |
| A601 | Plans & Sections Stair 1 | July 18, 2003 | Issued for Construction |
| A602 | Plans & Sections Stair 2,3 | July 18, 2003 | Issued for Construction |
| A651 | Elevator Cab Plans & Elevations | July 18, 2003 | Issued for Construction |
| A701 | Interior Partition Types | July 18, 2003 | Issued for Construction |
| A710 | Door Schedule & Details | July 18, 2003 | Issued for Construction |
| A720 | Window & Louver Schedule | July 18, 2003 | Issued for Construction |
| A750 | Finish Schedule | July 18, 2003 | Issued for Construction |
| A751 | Finish Schedule | July 18, 2003 | Issued for Construction |
| A752 | Finish Schedule Key | July 18, 2003 | Issued for Construction |
| A801 | Typical Details | July 18, 2003 | Issued for Construction |
| A802 | Typical Details | July 18, 2003 | Issued for Construction |
| A803 | Typical Roof Details | July 18, 2003 | Issued for Construction |
| A804 | Typical Foundation Details | July 18, 2003 | Issued for Construction |
| A811 | Exterior Wall Plan Details | July 18, 2003 | Issued for Construction |
| A812 | Exterior Wall Plan Details | July 18, 2003 | Issued for Construction |
| A813 | Exterior Wall Plan Details | July 18, 2003 | Issued for Construction |
| A820 | Exterior Wall Section Details | July 18, 2003 | Issued for Construction |
| A821 | Exterior Wall Section Details | July 18, 2003 | Issued for Construction |
| A822 | Exterior Wall Section Details | July 18, 2003 | Issued for Construction |
| A823 | Exterior Wall Section Details | July 18, 2003 | Issued for Construction |
| A824 | Exterior Wall Section Details | July 18, 2003 | Issued for Construction |
| A825 | Exterior Wall Section, Plan & Elevation Details | July 18, 2003 | Issued for Construction |

**Landscaping**

| L1.01 | Planting Plan | July 18, 2003 | Issued for Construction |
|---|---|---|---|
| L2.01 | Irrigation Plan | July 18, 2003 | Issued for Construction |

**Structural**

| S101 | Foundation / Level 2 Plan Parking Level 1 Framing Plan | July 18, 2003 | Issued for Construction |
|---|---|---|---|
| S102 | Ground & 2nd Floors Framing Plan | July 18, 2003 | Issued for Construction |



QUINCY PARK CO.    OMINIUM PROJECT
WASHINGTON, D.C.

## EXHIBIT A
### (8/13/03)

| | | | |
|---|---|---|---|
| S103 | Third & Fourth Floors Framing Plan | July 18, 2003 | Issued for Construction |
| S104 | Fifth Thru Ninth Floors Framing Plan | July 18, 2003 | Issued for Construction |
| S105 | Main Roof, Elev. Mach. Room Floor And Penthouse Roof Framing Plans | July 18, 2003 | Issued for Construction |
| S201 | Column and Beam Schedule | July 18, 2003 | Issued for Construction |
| S202 | Concrete Beam Schedule | July 18, 2003 | Issued for Construction |
| S301 | Sections | July 18, 2003 | Issued for Construction |
| S302 | Sections | July 18, 2003 | Issued for Construction |
| S303 | Sections and Details | July 18, 2003 | Issued for Construction |
| S304 | Sections and Details | July 18, 2003 | Issued for Construction |
| S305 | Sections and Details | July 18, 2003 | Issued for Construction |
| S306 | Stair Sections and Details | July 18, 2003 | Issued for Construction |
| S307 | Sections and Details | July 18, 2003 | Issued for Construction |
| S308 | Sections and Details | July 18, 2003 | Issued for Construction |
| S309 | Sections and Details | July 18, 2003 | Issued for Construction |
| S401 | Typical Details | July 18, 2003 | Issued for Construction |
| S402 | Typical Details | July 18, 2003 | Issued for Construction |

**Plumbing**

| | | | |
|---|---|---|---|
| P-1 | Plumbing Symbols Details, Schedules and Notes | July 18, 2003 | Issued for Construction |
| P-2 | Levels P1 and P2 Plumbing Plans | July 18, 2003 | Issued for Construction |
| P-3 | Ground Floor and 2nd Floor Plumbing Plans | July 18, 2003 | Issued for Construction |
| P-4 | Typical 3rd Thru 8th And 9th Floor Plumbing Plans | July 18, 2003 | Issued for Construction |
| P-5 | Roof Plumbing Plan | July 18, 2003 | Issued for Construction |
| P-6 | Plumbing Sanitary Riser Diagrams | July 18, 2003 | Issued for Construction |
| P-7 | Plumbing Sanitary Riser Diagrams | July 18, 2003 | Issued for Construction |
| P-8 | Plumbing Sanitary Riser Diagrams | July 18, 2003 | Issued for Construction |
| P-9 | Domestic Water Riser Diagram Plumbing | July 18, 2003 | Issued for Construction |
| P-10 | Domestic Water Riser Diagram Plumbing | July 18, 2003 | Issued for Construction |
| P-11 | Domestic Water Riser Diagram Plumbing | July 18, 2003 | Issued for Construction |
| P-12 | Domestic Water Riser Diagram Plumbing | July 18, 2003 | Issued for Construction |
| P-13 | Domestic Water Riser Diagram Plumbing | July 18, 2003 | Issued for Construction |
| P-14 | Natural Gas Riser Diagram Plumbing | July 18, 2003 | Issued for Construction |
| P-15 | Storm Drainage Riser Diagram Plumbing | July 18, 2003 | Issued for Construction |
| P-16 | Fire Protection Riser Diagram Plumbing | July 18, 2003 | Issued for Construction |

**Electrical**

| | | | |
|---|---|---|---|
| E-1 | Electrical Symbols Abbreviations, Notes and Light Fixture Schedule | July 18, 2003 | Issued for Construction |
| E-2 | Parking Level P2 and Parking Level P1 Electrical Plan | July 18, 2003 | Issued for Construction |
| E-3 | First Floor and Second Floor Electrical Plan | July 18, 2003 | Issued for Construction |
| E-4 | Typical Floor (3rd To 8th) And 9th Floor | July 18, 2003 | Issued for Construction |
| E-5 | Roof/Penthouse Electrical Plan | July 18, 2003 | Issued for Construction |



QUINCY PARK CO  )OMINIUM PROJECT
WASHINGTON, D.C.

## EXHIBIT A
(8/13/03)

| | | | |
|---|---|---|---|
| E-6 | Typical 1/4" Scale Condo Layouts | July 18, 2003 | Issued for Construction |
| E-7 | Power Riser Diagram | July 18, 2003 | Issued for Construction |
| E-9 | Fire Alarm Riser and Telecom Riser | July 18, 2003 | Issued for Construction |
| E-8 | Main Electric Room, Pump Room, Telephone Room and Switchboard Detail Plan | July 18, 2003 | Issued for Construction |
| E-10 | Fire Alarm Annunciator Detail, System Matrix and Notes | July 18, 2003 | Issued for Construction |
| E-11 | Panel Schedules | July 18, 2003 | Issued for Construction |

**Mechanical**

| | | | |
|---|---|---|---|
| M-1 | Mechanical Title Sheet | July 18, 2003 | Issued for Construction |
| M-2 | Garage Levels P2 and P1 Mechanical Plans | July 18, 2003 | Issued for Construction |
| M-3 | Ground and 2nd Floor Mechanical Plans | July 18, 2003 | Issued for Construction |
| M-4 | Typical Floor (3-8) and 9th Floor Mechanical Plans | July 18, 2003 | Issued for Construction |
| M-5 | Penthouse and Roof Mechanical Plans | July 18, 2003 | Issued for Construction |
| M-6 | Mechanical Riser Diagrams | July 18, 2003 | Issued for Construction |
| M-7 | Mechanical Schedules and Details | July 18, 2003 | Issued for Construction |
| M-8 | Mechanical Details | July 18, 2003 | Issued for Construction |
| M-9 | Mechanical Riser Diagrams Details | July 18, 2003 | Issued for Construction |

**Vertical Transportation**

| | | | |
|---|---|---|---|
| VT01 | General Elevator Information | July 18, 2003 | Issued for Construction |
| VT02 | Pit, Hoistway, Machine Room Plans and Hoistway Section Elevators 1 & 2 | July 18, 2003 | Issued for Construction |



Quincy Park Condominium Project
**PROSPECT WATERPROOFING COMPANY**
Subcontract Agreement Dated: September 10, 2003
**Revised: October 28, 2003**

## EXHIBIT B

**This Subcontract shall become effective only when Clark has received approval of this Subcontract from the Owner. Upon occurrence of this condition precedent, Clark will advise Subcontractor in writing. Subcontractor shall not proceed without written direction from Clark to do so.**

Provide all labor, material and equipment to fully execute the requirements to furnish, deliver and install the following work in accordance with the Contract Documents listed in Exhibit A:

> **SECTION 07110 – DAMPROOFING (complete)**
> **SECTION 07140 – FLUID APPLIED WATERPROOFING (complete)**
> **SECTION 07160 – CEMENTITIOUS WATERPROOFING (complete)**
> **SECTION 07170 – BENTONITE WATERPROOFING (complete)**
> **SECTION 07560 – FLUID APPLIED MEMBRANE ROOFING (complete)**
> **SECTION 07620 – SHEET METAL FLASHING AND TRIM (complete)**
> **SECTION 07720 – ROOF ACCESSORIES (complete)**
> **SECTION 02300 – EARTHWORK (as it applies to your work)**
> **SECTION 02630 – STORM DRAINAGE (as it applies to your work)**
> **SECTION 03300 – CAST-IN-PLACE CONCRETE (as it applies to your work)**
> **SECTION 07210 – BUILDING INSULATION (as it applies to your work)**
> **SECTION 07920 – JOINT SEALANTS (as it applies to your work)**
> **DIVISION 1 – GENERAL REQUIREMENTS (as it applies to your work)**
> **DIVISION 15 – MECHANICAL (as it applies to your work)**

This Subcontract shall also include, but is not limited to, the items listed below:

1.    Guarantees, warranties and tests as required by the Contract Documents.

2.    Engineering and layout for your work from control lines and benchmarks established by others.

3.    Field measure conditions necessary to insure correct fabrication of materials provided under this Subcontract.

4.    Not used.

5.    Flashing, mastic, caulking, sealants, and joint fillers required for your work, including to adjacent materials and penetrations by the work of others.

6.    Cutouts in your work required for the work of other trades.

Qui.. . Park Condominium Project
**PROSPECT WATERPROOFING COMPANY**
Subcontract Agreement Dated: September 10, 2003
**Revised: October 28, 2003**

## EXHIBIT B

7.    Foundation drainage system complete including, but not limited to, piping, gravel, filter fabric, drainage board, protection board, excavation, and backfill.  Provide foundation sleeves for installation by others.

8.    Not used.

9.    Drainboard and bentonite waterproofing complete, including minor surface preparation.

10.    Patching around foundation wall penetrations.

11.    Not used.

12.    Expansion joints for your work.

13.    Not used.

14.    Damp-proofing of masonry walls (2,3/A811, A824).

15.    Pavers at terraces (2/A322).

16.    Flashing for you work. Through wall flashing is by the masonry subcontractor.

17.    Copper coping at roof parapet walls and metal coping at penthouse.

18.    Complete roofing system including membrane, insulation, filter fabric, protection board, ballast, scuppers, gravel stops, etc.  Roof drains by plumbing subcontractor.

19.    Not used.

20.    Paver walkways at roof as required by the Contract Documents.

21.    Vent and pipe penetrations at the roof (1-2/A803).  Coordinate your work with the mechanical subcontractor.

22.    **Not used.**

23.    Rigging, hoisting and scaffolding for your work.

24.    **Not used.**

25.    Daily clean-up of all trash and debris resulting from your work and remove from the Project site.



## EXHIBIT B

26.   Centrally locate spoils for removal by excavation subcontractor.

27.   Time is of the essence in the execution of the work of this Subcontract. Therefore, sufficient labor and materials must be provided at all times to meet Clark's Job Progress Schedule (hereinafter "Schedule"). Subcontractor shall take whatever steps necessary, including additional manpower, equipment, overtime, shifts, etc. at its sole cost and expense, to extent Subcontractor is at fault, to perform its work in a time frame and sequence to meet the Schedule and the following milestones:

    a.   Complete submittals shall be furnished by September 30, 2003.

    b.   Materials shall be available for delivery by October 6, 2003, with delivery and start of installation as directed by Clark. Materials shall be available in a sequence that will not interrupt or delay the work.

    c.   Installation of foundation drainage system shall be completed within two (2) weeks after commencement.

    d.   The remaining work shall be complete in accordance with the Schedule.

## EXCLUSIONS:

**A.   Water stops. (by concrete subcontractor)**
**B.   Shower pan waterproofing. (by mechanical subcontractor)**
**C.   Protection of your work from damage by other trades. (by Clark)**
**D.   Modified roofing with tapered insulation (10/A8.24). (Not applicable to specified roofing system)**

## OTHER PROVISIONS:

1.   In addition to the value engineering items included in Exhibit "I", the Owner has accepted the following two additional value engineering items which are included in this Subcontract:

    a.   Delete drainage board at ground level terraces over garage. The Subcontract amount includes a credit of $2,250.00 for this item.

    b.   Delete insulation at terraces above garage except where above the Telephone Room and Main Electric Room. 1/8" protection board is required beneath paver support pedestals where insulation is not used. The Subcontract amount includes a credit of $4,000.00 for this item.

**CLARK**
QUINCY PARK

QUINCY PARK CONDOMINIUM PROJECT
WASHINGTON, D.C.

## EXHIBIT D
(07/22/03)

## GENERAL REQUIREMENTS:

This Subcontract shall include, but is not limited to, the items listed below:

1. Prior to proceeding with any work on this project, Clark may require that a pre-mobilization start-up meeting be held with our Regional Director and/or Project Safety and Health Manager. This meeting will review the established Project Safety Start-Up Program. Subcontractor's project supervisor and supervisors of any subcontractors working for Subcontractor must attend.

2. Extra work tickets will not be honored unless signed by an Officer of Clark.

3. This Subcontract is contingent upon Owner approval. Subcontractor will not proceed with the work of this Subcontract without the following: specific written direction from Clark, an executed Subcontract, approved performance and payment bonds (if required), and receipt of approved insurance certificate(s) by Clark.

4. Where Subcontractor is to provide a bond, Subcontractor shall provide acceptable consent(s) of surety to any reduction in retainage and to final payment, or as otherwise reasonably requested by Clark. Receipt of such consent by Clark is a condition precedent to Clark's obligation to pay funds to Subcontractor.

5. Subcontractor agrees that as a condition precedent to its receiving any CAD information from the project architect or any other designer to the project, Subcontractor will, at Clark's direction, either sign directly the indemnity and other documentation required by the architect or designer related to the CAD information or will indemnify, defend and hold harmless Clark for any and all damages, losses, claims, liabilities or costs incurred by Clark arising out of the use of the CAD information. This indemnification obligation is in addition to those set forth in the Subcontract and other Contract Documents.

6. A set of reproducible Contract Documents will be on file at a printer selected by Clark. Any Contract Documents must be purchased directly from the printer at no cost to Clark.

7. It is the intent of this Subcontract that the work performed pursuant hereto be complete and acceptable in every respect. The descriptions of the work included herein are clarifications of specific items and are not intended to limit the scope of work required or reasonably inferable for complete systems in accordance with the Contract Documents. Subcontractor includes the cost to perform all work necessary to provide a complete and useable facility in accordance with the scope of this Subcontract and the Contract Documents whether or not all items are explicitly shown or included in the Contract Documents.

8. Where back charges arise between Subcontractors or between the Subcontractor and Clark, charges shall be at cost without markup for overhead or profit.



QUINCY PARK     NDOMINIUM PROJECT
WASHINGTON, D.C.

## EXHIBIT D
(07/22/03)

9. In accordance with the requirements of the Owner-Contractor Agreement, the provisions listed below are specifically included by reference in this Subcontract. This Subcontractor is bound to Clark for compliance with these provisions of the Owner-Contractor Agreement to the same extent that Clark is bound to the Owner. Subcontractor agrees to include these provisions in any lower tier subcontract(s) and shall be responsible for the compliance of its lower tier subcontractor(s). This Subcontractor agrees to furnish all submittals and documents required for such compliance in accordance with the requirements of said provisions:

    a. Department of Human Rights and Minority Business Development, Memorandum of Understanding.

    b. For subcontracts in excess of $100,000, sign and comply with the District of Columbia Department of Employment Services (DOES) First Source Employment Agreement.

    c. For subcontracts in excess of $500,000, registration of an approved Apprenticeship Program with the DC Office of Apprenticeship Information and Training is required.

10. Within 30 days of the award of this Subcontract, Subcontractor shall provide a detailed, itemized schedule of all equipment and material to be provided by this Subcontractor, and shall update the schedule monthly until all items are delivered. For each piece of equipment or material required to perform the Subcontractor's work, the list shall include the ultimate supplier, the Subcontractor's purchase order number to manufacturer, the supplier's representative and phone number, proposed and actual submittal dates, required submittal approval dates and the original and current scheduled delivery dates.

11. This Project intends to use a web-based project management application for the distribution of the project information including, but not limited to, RFI's, transmittals and correspondence. Subcontractor is to maintain an active Internet account and a minimum of one (1) license for the Project duration.

12. Provide one laborer for each ten men on site, or portion thereof, to participate in a composite clean-up crew of areas designated by Clark for a full eight hour day once per week. Your laborer shall continue to be your agent and employee while participating in this task. This Subcontractor shall continue to be responsible for the daily clean-up and removal of all trash and debris which results from this Subcontractor's operations.

13. This Subcontractor agrees that neither he nor anyone employed by him shall display or publish advertising matter of any description or will take pictures or photographs of the work or on the site without written permission of Clark and the Owner.

14. Construction activity shall not occur on the site prior to 7:00 a.m. or after 7:00 p.m. Monday-Saturday. Pile driving and the use of extraordinarily loud construction vehicles and equipment will not begin until 8:00a.m. No construction activity will occur on Sunday. Excessive exterior



QUINCY PARK    NDOMINIUM PROJECT
WASHINGTON, D.C.

## EXHIBIT D
### (07/22/03)

noise will be kept down on Saturday from 9:00a.m. until the end of construction activities for the day. In addition, pile driving will not be permitted on Saturday or Sunday.

15. Parking on 11th Street and L street is prohibited. All local construction parking is to take place in the parking lot across 10th street from the construction site. Payment for parking services will be handled via change order to the contract after agreement between subcontractor, owner, and Clark.

16. All construction traffic will follow the traffic management plan from DC DOT. A copy of the plan is available in the Clark office. Subcontractors are to ensure that all construction vehicles, especially heavy trucks, follow the plan.

17. The Subcontractor shall prepare early one complete condominium unit for approval by the Owner and Architect. The condominium unit shall serve as a Standard for the balance of the condominium units of the Project. Subcontractor will be responsible for completing all units to the Standard of quality established by the approved early unit. In no event will approval of the Standard modify the terms of the Contract Documents. Costs to perform this out of sequence work are included in this Subcontract Agreement.

18. Subcontractor shall assume all warranty obligations that Clark has assumed towards the Owner. This Subcontract includes a two (2) year warranty from the date of the Substantial Completion of this Project, except where exceeded by the Contract Documents requirements.

## INSURANCE REQUIREMENTS

### EXHIBIT E
(07/01/03)

**Project No.: 112428**

**Project Name: Quincy Park Condominium Project**

The information noted below sets forth the insurance required by the Subcontract Agreement.

We require that your agent endorse your policy and show the following on your Certificate:

1) Clark Quincy Park, LLC; Carr Square 341, LLC; Carr Enterprises L.L.C.; and Philip A. Esocoff, FAIA are additional insureds on all policies except Workers Compensation.

2) This coverage as additional insureds shall be at least as broad as ISO Form CG 20 10 (11/85) and shall be deemed primary with respect to any other coverages carried by the additional insureds, for liability arising out of subcontractor's operations. Equivalent acceptable endorsements include;
CG 20 10 (3/97) in conjunction with CG 20 37 (10/01) or
CG 20 10 (10/01) in conjunctin with CG 20 37 (10/01)

3) Certificate should show the issuing company <u>will</u> mail 30 days written notice of cancellation to Clark Quincy Park, LLC (not "will endeavor to", as some certificates state).

4) Policy terms, limits and coverages should equal or exceed any requirements specified in the contract documents or required by law and must be at least:

| | |
|---|---|
| Gen. Liability/Excess: | $4,000,000 Major Subs |
| | $1,000,000 All Others |
| Auto Liability: | $1,000,000 |
| Workers Compensation: | Per statute, with All States coverage. |
| | Certificates from employee leasing companies will not be accepted. |

It should be noted that your General Liability policy, including Completed Operations coverage, must remain in force through the building's warranty period, with additional insureds as noted above.

**Promptly provide us with your Certificate, completed in accordance with the above requirements, to enable us to make timely progress payments.**

Quin\. ark Condominium Project
**PROSPECT WATERPROOFING COMPANY**
Subcontract Agreement Dated: September 10, 2003

## EXHIBIT F

1.  Article 4.b.  At end of the article, add "The rate at which retention is held on this Subcontractor will be reduced at the same time and to the same extent Clark's retention is reduced for this Subcontractor's work, subject to withholdings hereunder."

2.  Article 4.g.  In the first sentence, delete "or any other agreement between the parties" in two places.  Delete the second sentence.  At the end of the article add the following:  "Clark may withhold payments otherwise due under this Subcontract or any other agreement between the parties to the extent Clark and Subcontractor reasonably agree on the merits of the claim and an estimate of any costs or liability Clark has or may incur for which Subcontractor may be responsible under this Subcontract or any other agreement between the parties."

3.  Article 4.h.  Replace, "shall not be due until after the last of the following to occur", with, "shall be made within 60 days after the last of the following occurs".  Replace "entire Project" in two places with "work of this Subcontract".

4.  Article 6.a.  At end of paragraph, add "Notwithstanding any provision to the contrary, if parties other than this Subcontractor are responsible for loss, damage, or destruction and such responsibility can be established, Clark will assist Subcontractor in recovering from the responsible party any costs incurred.  Clark will also assist Subcontractor in recovery under the Builder's Risk Policy if appropriate."

5.  Article 9.d.  At end of the first sentence add ", which shall be determined as soon as possible after Clark's receipt of Subcontractor's proposal."

QUINCY PARK CONDOMINIUM PROJECT
WASHINGTON, D.C.

**CLARK**
**QUINCY PARK**

## EXHIBIT G
### (8/19/03)

**Bid Clarifications:**

1. We include color and pattern selections from manufacturer's standard colors and patterns where finish is specified to be selected by the Architect, unless clarified otherwise in this document.

2. We have included a standard color for the overhead doors in lieu of a custom color.

3. Section 1.23 of Specification Section 15010 regarding objectionable noises is not included as it does not provide a standard measure. Our bid is based on the acoustic properties of the specified products.

4. Exposed concrete ceilings within the condominium dwelling units are included as painted concrete. Paint type, color, and number of coats will be the same as the adjacent walls.

5. The kitchen granite countertops are provided in Sand Black to match the sample approved by the Owner on 6/2/03 in lieu of the specified Absolute Black.

6. We have included an alternate brick Type 3 for the specified exterior brick.

7. The exterior stone base on 8/A823 will be provided as split face block.

8. The balcony railings will be provided as manufacturer's standard, pre-finished aluminum rails, in a manufacturer's standard color, with a single top bar. The balcony slab wrap detail on 6/A801 is deleted.

9. The decorative grilles shown on 4/A811 are deleted. The louvers in these locations will upgraded to architectural louvers.

10. We have included a manufacturer's standard window receptor in lieu of the specified window receptor.

11. Manufacturer's standard male-female window mullions are included in lieu of the 3-piece mullions shown on the Contract Documents. The manufacturer's standard window mullion will be provided at all window types except for type "C". The Type "C" window mullions will remain as specified. All mullion transitions between terrace doors and sidelights will remain as specified.

12. The storefront doors will be provided with the manufacturer's standard hardware in lieu of the specified hardware products.

**CLARK**
QUINCY PARK

### EXHIBIT G
(8/19/03)

13. The ceramic tile at shower stalls will be terminated one tile above the showerhead plumbing. The remaining height of the wall will be painted.

14. Ceramic tile is not included in the P-1 level bathroom. The floor will be painted concrete.

15. Painting at the underside of the balconies is not included. The surface is to be exposed concrete.

16. Elevator entrances will be provided as bolted knock-down frames in the manufacturer's standard color options. Additionally, the elevator management terminal in the penthouse and dual mode elevator operation is not included.

17. As there are discrepancies between the Architectural and Plumbing Drawings, (double sinks versus single sinks) the bathroom master bath vanity plumbing is based on the Architectural drawings.

18. The ISE Insta-hot water makers are not included.

19. An alternate control system for HVAC for the penthouse mechanical room is provided in lieu of the specified product. The control system will have standard 24V controls for the units with a programmable night set-back manual thermostat in lieu of the thermostat specified.

20. The speed controllers on the toilet exhaust fans are not included.

21. We have included plumbing fixtures by Suneli in lieu of the specified manufacturer.

22. Two convenience receptacle outlets in the corridor on each floor are not included. The remaining receptacle outlets are circuited vertically rather than horizontally.

23. We have not included dimmer switches.

24. We have not included the PVC conduits shown from the telephone and TV closets to the condominiums units.

25. Our price is based on an emergency generator size of 125KW with reduced feeders and transfer switches in lieu of the 275KW generator and applicable feeders and transfer switches specified.

26. MC cable for the fire alarm system wiring is used in lieu of conduit and wire. Condominium smoke detectors are to be 120V, and alarm only at the condominium unit.

**CLARK**
QUINCY PARK

QUINCY PARK CONDOMINIUM PROJECT
WASHINGTON, D.C.

## EXHIBIT G
### (8/19/03)

The fire alarm system within the dwelling unit will not have sub-relay bases or monitoring by the building's fire alarm system.

27. Condominium panel feeders are revised from copper to aluminum.



Quin     ırk Condominium Project
**PROSPECT WATERPROOFING COMPANY**
Subcontract Agreement Dated: September 10, 2003

## EXHIBIT I - ALTERNATES

**ACCEPTED ALTERNATES**:

The following alternates have been accepted by the Owner and are included in the Contract and in this Subcontract/Purchase Order as they apply to the work of this Subcontract/Purchase Order, all in accordance with the Contract Documents. The amount indicated for each item is the amount quoted by the Subcontractor/Supplier as the impact upon its original quotation and is included here for accounting purposes only.

| Alternate No. | Description | Amount |
|---|---|---|
| 1. | Delete irrigation to 4 planters on terrace | $0.00 |
| 2. | Delete 4 planters at terraces | $0.00 |
| 3. | Revised plant listing (reduced plantings) | $0.00 |
| 4. | Delete precast headers & sills at North & West Elevations and replace headers with brick soldier course headers and replace sills with 6" sill blocks. | $0.00 |
| 5. | Revise and simplify shapes of retaining and planter walls (precast and masonry), handrails and slate paving at main entrance on L Street. | $0.00 |
| 6. | Revise retaining wall coping stone (except at main entrance) from precast to standard semi-solid cap block. | $0.00 |
| 7. | Revise top of parapet wall at roof from precast coping stone to wood blocking with copper coping. Wood blocking by rough carpentry subcontractor. | $8,600 |
| 8. | Revise details 1, 4, 5, 7, & 9 on A821 from precast to brick at window side of balconies. | $0.00 |
| 9. | Revise masons flashing from hyload with cloaks to perm-a-barrier with metal lip. | $0.00 |
| 10. | Replace mortar net cavity drainage material with mortar break cavity drainage material. | $0.00 |
| 11. | Revise masonry at North & West Elevations as indicated on A302. | $0.00 |
| 12. | Revise Brick Type 3 to manufacturer: Cloud Ceramics. Color: Coral Blend | $0.00 |
| 13. | Revise base around building from stone to split face CMU1. | $0.00 |
| 14. | Revise balcony rails from steel to pre-manufactured aluminum rails. | $0.00 |
| 15. | Delete balcony slab wrap system and replace with traffic coating. | $0.00 |
| 16. | Delete star punches on inner of 2 trellis's. | $0.00 |

Qui.    ark Condominium Project
**PROSPECT WATERPROOFING COMPANY**
Subcontract Agreement Dated: September 10, 2003

## EXHIBIT I - ALTERNATES

| Alternate No. | Description | Amount |
|---|---|---|
| 17. | Delete metal grills at garage air intakes and upgrade louvers to architectural louvers. | $0.00 |
| 18. | Delete stair nosings. | $0.00 |
| 19. | Revise wall type 12 from steel angles to dove tail anchors. | $0.00 |
| 20. | Revise window receptors to manufacturers standard. | $0.00 |
| 21. | Revise storefront door hardware to manufacturers standard. | $0.00 |
| 22. | Revise window mullions from 3-piece to 2-piece. | $0.00 |
| 23. | Revise wall finishes in bathrooms to stop ceramic tile one tile above the shower head. | $0.00 |
| 24. | Revise garage bathroom from ceramic tile to painted walls. | $0.00 |
| 25. | Eliminate requirement to paint the underside of the balconies. | $0.00 |
| 26. | Revise corridor receptacle requirements (delete 2 per corridor). | $0.00 |
| 27. | Revise the fire alarm system to minimize components. | $0.00 |
| 28. | Eliminate dimmer switches on lights. | $0.00 |
| 29. | Revise the telephone/TV conduit design requirements. | $0.00 |
| 30. | Revise the condominium feeders to the panels from copper MC to aluminum. | $0.00 |
| 31. | Revise Emergency Generator requirements to minimum requirements. | $0.00 |
| 32. | Delete double piped master bath sinks in most locations. | $0.00 |
| 33. | Delete instant hot water makers at kitchen sinks. | $0.00 |
| 34. | Provide alternate t-stats & automatic temperature controller system. | $0.00 |
| 35. | Delete speed controllers on toilet exhaust fans. | $0.00 |
| 36. | Provide alternate plumbing fixtures. | $0.00 |
| 37. | Paint ceilings in condominiums vs. exposed concrete. | $0.00 |
| 38. | Revise elevator entrances from welded to bolted knock-down frames & provide standard color selections vs. custom colors for frames. | $0.00 |
| 39. | Remove elevator management terminal in Penthouse. | $0.00 |

**CLARK**
QUINCY PARK

Quinc.    k Condominium Project
**PROSPECT WATER ROOFING COMPANY**
Subcontract Agreement Dated: September 10, 2003

## EXHIBIT I - ALTERNATES

| Alternate No. | Description | Amount |
|---|---|---|
| 40. | Eliminate requirement for elevator dual mode operation. | $0.00 |
| 41. | Reduced volume of precast pieces at balconies and window head/shelf angle. | $0.00 |
| 42. | Revisions to plans & specifications from GMP set (including Addendum #1) to Issued for Construction set dated 6/18/03 (not included in other alternates previously listed on this document). | $0.00 |