

Clark Quincy Park, LLC
7500 Old Georgetown Road
Bethesda, Maryland 20814-6196
Phone: 301-272-2910

# Subcontract Agreement

THIS SUBCONTRACT, made this 17TH DAY OF SEPTEMBER, 2003 by and between CLARK QUINCY PARK, LLC (hereinafter "Clark") and CLARK CONCRETE CONTRACTORS LLC of 7500 OLD GEORGETOWN ROAD, BETHESDA, MD 20814 (hereinafter "Subcontractor").

### WITNESSETH:

WHEREAS, Clark and CARR SQUARE 341, LLC C/O CARR ENTERPRISES L.L.C., 1750 H STREET, NW, SUITE 500, WASHINGTON, D.C. 20005 (hereinafter "Owner", which term shall cover all of the Owner's agents and representatives including as appropriate the Architect and any other person or entity to the extent the Contract Documents which are hereby incorporated by reference expressly give functions to such person or entity) have entered into a contract dated June 23, 2003 for the construction of QUINCY PARK CONDOMINIUM PROJECT, WASHINGTON, D.C. (hereinafter "Project"), according to the Contract Documents listed in Exhibit A attached hereto (hereinafter "Contract Documents") and available for Subcontractor's review; and

WHEREAS, Clark desires to subcontract certain work specified in the Contract Documents, and Subcontractor desires to perform said work at the prices and upon the terms and conditions hereinafter expressed;

NOW THEREFORE, in consideration of the mutual agreements herein expressed, the parties do contract as follows:

### 1. Subcontractor's Work

a.    Subcontractor shall perform all work and shall furnish all supervision, labor, materials, plant, scaffolding, tools, equipment, supplies and all other things necessary for the construction and completion of the work described in Exhibit B and work incidental thereto, in strict accordance and full compliance with the terms of the Contract Documents (which are hereby incorporated by reference) and this Subcontract and to the satisfaction of Clark and the Owner.

b.    In respect of work covered by this Subcontract, Subcontractor shall, except as otherwise provided herein, have all rights which Clark has under the Contract Documents toward the Owner. Subcontractor shall assume all obligations, risks and responsibilities which Clark has assumed towards the Owner in accordance with the Contract Documents. Subcontractor shall have the right to enforce its rights and remedies and to defend against claims against it by the Owner as provided in Article 11.

### 2. Complete Agreement

This Subcontract contains the entire agreement between the parties hereto with respect to the matters covered herein. No other agreements, representations, warranties, or other matters, oral or written, shall be deemed to bind the parties hereto.

### 3. Performance and Payment Bonds

a.    Immediately upon receipt of this Subcontract, Subcontractor shall at the expense of N/A furnish to Clark performance and payment bonds in the form attached hereto (Exhibit C) from a surety acceptable to Clark, each in the full amount of this Subcontract.

☑ No bond required at Subcontract formation. Article 3.a. not applicable when box is checked and no bond indicated above.

b.    If Subcontractor has not been required to furnish bonds or if Clark desires Subcontractor to provide additional bond coverage, Clark may, at any time upon written request, instruct Subcontractor to provide within ten (10) days performance and payment bonds, in a form and from a surety acceptable to Clark, in an amount up to the then current full value of this Subcontract. In this event, Clark will reimburse Subcontractor for reasonable bond premium.

c.    The payment of any incremental increase in the cost of bonds arising as a result of changes in the work shall be the responsibility of Subcontractor and may be included as a part of Subcontractor's price quotation for proposed changes pursuant to Article 9.

### 4. Payment

a.    Clark shall pay Subcontractor for performance of the work subject to additions and deductions by change order or other Subcontract provisions, the total sum of THREE MILLION TWO HUNDRED NINETY FOUR THOUSAND DOLLARS ($3,294,000.00).

b.    Partial payments shall be due Subcontractor in the amount of 90% of the work in place, which work has been approved by Clark and the Owner, and for which payment has been made to Clark by the Owner. If the Contract Documents allow Clark partial payments for on-site stored materials, partial payments shall also be due Subcontractor in the amount of 90% of materials stored on-site which have been approved by Clark and the Owner and for which payment has been made to Clark by the Owner. If the Contract Documents allow partial payment for materials stored off-site, such payments shall be made to Subcontractor in the amounts and under the standards set forth in the Contract Documents for off-site stored materials which have been approved by Clark and the Owner but only after Clark's receipt of payment therefor from the Owner. For the purpose of determining partial payments, Subcontractor shall submit a breakdown of the total Subcontract price (showing the amount included therein in each principal category of work) to Clark for approval within ten days of the execution of this Subcontract. In the event Clark disapproves said breakdown, Clark shall establish a reasonable breakdown which shall serve as the basis for partial payments.

EXHIBIT

2

Partial payments shall be due on or about the *10TH* day of the month following receipt of payment from the Owner by Clark as long as Subcontractor is in compliance with the terms of this Subcontract. No partial payment made under this Subcontract shall be considered an acceptance of the work, in whole or in part.

d.    Subcontractor shall ensure that all lower-tier subcontractors and employees, at all times, are timely paid all amounts due in connection with the performance of this Subcontract. After the first partial payment hereunder, Clark shall have the right to withhold any subsequent partial payments until Subcontractor submits evidence satisfactory to Clark that all amounts owed in connection with performance of this Subcontract have been paid. Further, Subcontractor agrees that Clark, after giving notice to Subcontractor, may pay all persons who have not been paid the monies due them in connection with this Subcontract whether or not a lien has been filed, unless Subcontractor, within 10 days of receipt of notice or such shorter period as Clark finds necessary to meet its obligations to the Owner, (i) demonstrates that such sums are not due and (ii) provides Clark adequate security.

e.    In the event Clark pays or indemnifies any person in accordance with this Subcontract, Subcontractor shall immediately reimburse Clark for the full cost thereof. Subcontractor shall, to the extent that Clark has not recovered said amounts pursuant to withholding, pay said amounts to Clark upon demand. Subcontractor shall also immediately reimburse Clark for any amounts paid under Clark's payment bond in connection with this Subcontract and indemnified by Clark.

f.    All material and work incorporated into the Project or for which partial payment has been made shall become the property of Clark, or, if the Contract Documents so provide, the property of the Owner; however, this provision shall not relieve Subcontractor from the sole responsibility and liability for all work and materials upon which payments have been made until final acceptance thereof by the Owner.

g.    Clark may withhold amounts otherwise due under this Subcontract or any other agreement between the parties to cover Clark's reasonable estimate of any costs or liability Clark has incurred or may incur for which Subcontractor may be responsible under this Subcontract or any other agreement between the parties. For purposes of this paragraph 4g, the phrase "any other agreement between the parties" shall be deemed to include any agreement between Subcontractor and Clark or any joint venture or other entity in which Clark has an ownership interest. Appropriate adjustments to withholdings shall be made when the exact amounts owed are determined.

h.    Final payment, subject to withholdings permitted hereunder, shall not be due until after the last of the following to occur: after Subcontractor's work has been completed and approved by the Owner, the entire Project is complete, all final payment prerequisites under the Contract Documents have been satisfied, satisfactory proof of payment of all amounts owed by Subcontractor in connection with this Subcontract has been provided, Article 13. has been complied with, and Clark has been paid in full for the entire Project.

i.    Subcontractor shall cooperate fully with Clark in securing payment to Clark by the Owner including but not limited to providing such supporting documentation as the Owner or Clark may require.

j.    At any time all monies due Clark from the Owner are not paid, Clark shall, in its sole discretion, apportion the nonpayment equitably and reduce the payments otherwise due Subcontractor accordingly. Such reductions shall continue until Clark is paid all monies due it, provided however, if the withholdings do not relate to Subcontractor's work, Subcontractor shall be paid in full when Clark's right to recover from the Owner is finally determined or expires. Subcontractor acknowledges that this Article 4.j. establishes a reasonable time for payment.

k.    Neither partial nor final payment shall constitute or imply acceptance of work or materials.

5.    Subcontractor's Investigations and Representations

Subcontractor represents that it is fully qualified to perform this Subcontract, and acknowledges that, prior to the execution of this Subcontract, it has (a) by its own independent investigation ascertained (i) the work required by this Subcontract, (ii) the conditions involved in performing the work, and (iii) the obligations of this Subcontract and the Contract Documents; and (b) verified all information furnished by Clark or others satisfying itself as to the correctness and accuracy of that information. Any failure by Subcontractor to investigate independently and become fully informed will not relieve Subcontractor from its responsibilities hereunder.

6.    Subcontractor's Liability

a.    Subcontractor hereby assumes the entire responsibility and liability for all work, supervision, labor and materials provided hereunder, whether or not erected in place, and for all plant, scaffolding, tools, equipment, supplies and other things provided by Subcontractor until final acceptance of work by the Owner. In the event of any loss, damage or destruction thereof from any cause, Subcontractor shall be liable therefor, and shall repair, rebuild and make good said loss, damage or destruction at Subcontractor's cost.

b.    Subcontractor shall be liable to Clark for all costs Clark incurs as a result of Subcontractor's failure to perform this Subcontract in accordance with its terms. Subcontractor's failure to perform shall include the failure of its lower-tier subcontractors to perform. Subcontractor's liability shall include but not be limited to (1) damages and other delay costs payable by Clark to the Owner; (2) Clark's increased costs of performance, such as extended overhead and increased performance costs resulting from Subcontractor-caused delays or improper Subcontractor work; (3) warranty and rework costs; (4) liability to third parties; (5) excess reprocurement costs; (6) consultants' fees; and (7) attorneys' fees and related costs.

c.    If any person (including employees of Subcontractor) suffers injury or death or any property is damaged, lost or destroyed, as a result, in whole or in part, of Subcontractor's acts or omissions, whether or not involving negligence of Subcontractor, his employees, agents or lower-tier subcontractors, Subcontractor assumes the liability therefor and shall indemnify and hold harmless therefrom the Owner and Clark and their agents, servants, employees and sureties. With respect to any action involving Subcontractor's acts or omissions, (i) Subcontractor shall at its own expense defend Clark and all other indemnified parties, and (ii) Subcontractor shall pay all costs and expenses, including attorneys' fees, of, and satisfy all judgments entered against, Clark and all other indemnified parties. Nothing herein shall preclude Clark from participating in any such defense. Subcontractor's assumption of liability herein is in addition to assumption of all liabilities on account of or in any way related to Subcontractor's work which Clark has assumed under the Contract Documents or under agreements with third parties who may be affected by construction of the Project.

d.    In the event that Subcontractor or any of its agents, employees, suppliers, or lower-tier subcontractors utilize any machinery, equipment, tools, scaffolding, hoists, lifts or similar items belonging to or under the control of Clark, Subcontractor shall be liable to Clark for any loss or damage (including personal injury or death) which may arise from such use, except where such loss or damage shall be due solely to the negligence of Clark employees operating Clark-owned or Clark-leased equipment.

e.    Subcontractor's assumption of liability is independent from, and not limited in any manner by, the Subcontractor's insurance coverage obtained pursuant to Article 7., or otherwise. All amounts owed by Subcontractor to Clark as a result of the liability provisions of this Subcontract shall be paid upon demand.

f.    Subcontractor's liability for Clark's costs under this Article 6., and under Articles 4., 10., 14., 22., and 23. shall include a 10% markup on the costs set forth therein. This markup is not a penalty but is established as liquidated damages to compensate Clark for its additional costs not readily ascertainable and/or to allow Clark a reasonable profit on work which Clark must perform as a result of Subcontractor's failure to perform properly.

g.    The Subcontract price includes one hundred dollars ($100.00) as specific consideration for indemnification under this Subcontract.

7.  Subcontractor's Insurance

a.    Prior to commencing the work, Subcontractor shall procure, with Clark, the Owner and such other parties as are required by Clark and/or the Contract Documents as additional insured parties on a primary basis, and thereafter maintain, at its own expense, until expiration of Subcontractor's obligations under the Subcontract, insurance coverage from insurers acceptable to Clark in such amounts and in such form as required by Exhibit E.

b.    Subcontractor waives all rights of recovery against Clark, the Owner, and such other parties as are required by Clark and/or the Contract Documents, for losses within the scope of Subcontractor's insurance.

c.    Upon request, Subcontractor shall provide Clark with certified copies of insurance policies required by Article 7.a.

8.  Time of Performance

a.    Subcontractor will proceed with the work in a prompt and diligent manner, in accordance with Clark's schedules as reasonably amended from time to time. Subcontractor shall be liable to Clark for failure to adhere to Clark's schedules including amendments even if such schedules differ from schedules set forth in the Contract Documents or the time of completion called for by the Contract Documents. TIME IS OF THE ESSENCE.

b.    If requested by Clark, Subcontractor shall submit detailed schedules for performance of the Subcontract, in a form acceptable to Clark, which shall comply with all scheduling requirements of the Contract Documents and of paragraph a. above. Clark may from time to time, at its sole discretion, direct Subcontractor to make reasonable modifications and revisions in such schedules.

c.    Subcontractor will coordinate its work with the work of Clark, other subcontractors, and the Owner's other contractors, if any, so no delays or interference will occur in completion of any part or all of the Project.

d.    Subcontractor shall be entitled to additional compensation for compliance with schedule amendments or damages for delay only to the extent the Contract Documents entitle Clark to damages or to a contract adjustment increasing the price or Guaranteed Maximum Cost of the contract between Clark and Owner.

9.  Changes

a.    Clark may, at any time, unilaterally or by agreement with Subcontractor, without notice to the sureties, make changes in the work covered by this Subcontract. Any unilateral order or agreement under this Article 9.a. shall be in writing. Subcontractor shall perform the work as changed without delay.

b.    Subcontractor shall submit to Clark any requests or claims for adjustment in the price, schedule or other provisions of the Subcontract for changes directed by the Owner, as a result of deficiencies or discrepancies in the Contract Documents, or for circumstances otherwise permitted by the Contract Documents. Said requests or claims shall be submitted in writing by Subcontractor in time to allow Clark to comply with the applicable provisions of the Contract Documents. Clark shall process such requests or claims in the manner provided by and according to the provisions of the Contract Documents so as to protect the interest of Subcontractor and others including Clark. Subcontract adjustments shall be made only to the extent that Clark is entitled to relief from or must grant relief to the Owner. Further, each Subcontract adjustment shall be equal only to Subcontractor's allocable share of any adjustment in Clark's contract with the Owner. Subcontractor's allocable share shall be determined by Clark, after allowance of Clark's normal overhead and profit on any recovery and Clark's expense of recovery, by making a reasonable apportionment, if applicable, between Subcontractor, Clark and other subcontractors or persons with interests in the adjustment. This paragraph shall also cover other equitable adjustments or other relief allowed by the Contract Documents.

c.    Payment on account of pending changes made by the Owner shall be made only if Clark receives such payment from the Owner for Subcontractor's changed work. Each payment to Subcontractor on account of pending change orders shall be equal to Subcontractor's allocable share of Clark's payment from the Owner for the pending change as determined by Clark. Amounts paid on account of pending changes are provisional and not an admission of liability and shall be repaid to Clark on demand whenever Clark determines there has been an overpayment.

d.    For changes ordered by Clark independent of the Owner or the Contract Documents, Subcontractor shall be entitled to equitable adjustment in the Subcontract price. If Subcontractor considers any action or inaction by Clark other than a formal change order to be a change, it shall so notify Clark within three (3) days of said action or inaction and seek a confirmation from Clark. Failure to comply with said confirmation procedure shall constitute a waiver of the right to compensation for the action or inaction.

e.    Subcontractor shall within seven (7) days of a Clark request submit a reasonable price quotation for proposed changes. If Subcontractor does not and Clark is required to submit a price quotation to the Owner which includes a proposed change to Subcontractor's work, Clark shall use its best estimate of the proposed change as it affects the Subcontract in its quotation to the Owner, which estimate shall be the maximum equitable adjustment due to Subcontractor.

10.  Subcontractor's Failure to Perform

a.  If, in the opinion of Clark, Subcontractor shall at any time (1) refuse or fail to provide sufficient properly skilled workers, adequate supervision or material of the proper quality, (2) fail in any material respect to prosecute the work according to Clark's current schedule, (3) cause, by any action or omission, the stoppage or delay of or interference with the work of Clark or of any other contractor or subcontractor, (4) fail to comply with any provision of this Subcontract or the Contract Documents, (5) make a general assignment for the benefit of its creditors, (6) have a receiver appointed, or (7) become insolvent, then, after serving three (3) days' written notice, unless the condition specified in such notice shall have been eliminated within such three (3) days, Clark, at its option, without voiding the other provisions of this Subcontract and without notice to the sureties, may (i) take such steps as are necessary to overcome the condition, in which case the Subcontractor shall be liable to Clark for the cost thereof, (ii) terminate for default Subcontractor's performance of all or a part of the Subcontract work, or (iii) obtain specific performance or interlocutory mandatory injunctive relief requiring performance of Subcontractor's obligations hereunder, it being agreed by Subcontractor that such relief may be necessary to avoid irreparable harm to Clark and/or the Owner.  In the event of termination for default, Clark may, at its option, (a) enter on the premises and take possession, for the purpose of completing the work, of all materials and equipment of Subcontractor, (b) take assignment of any or all of Subcontractor's subcontracts, and/or (c) either itself or through others complete the work by whatever method Clark may deem expedient.  In case of termination for default, Subcontractor shall not be entitled to receive any further payment until the work shall be fully completed and accepted by the Owner and payment in full made by the Owner.  At such time, if the unpaid balance of the price to be paid shall exceed the expense incurred by Clark including overhead and profit, such excess shall be paid by Clark to Subcontractor.  If such amount shall exceed such unpaid balance, the Subcontractor shall pay Clark the difference on demand.

b.  If Clark wrongfully exercises its option under Article 10.a.(i), that action shall be treated as a deductive change.  If Clark wrongfully exercises its option under Article 10.a.(ii), that termination for default shall be considered a termination for Clark's convenience and Subcontractor shall be entitled to the applicable compensation provided in Article 16.  Subcontractor's remedies under this Article 10.b. shall be exclusive.  Nothing herein shall bar withholdings by Clark permitted by other provisions of this Subcontract.

11.  Settlement of Disputes

a.  In the event of any dispute involving the work performed or to be performed, Clark shall issue a decision which shall be followed by Subcontractor, without interruption, deficiency, or delay.  If Subcontractor does not agree with such decision, Subcontractor may make a claim under Article 9. and the matter shall be resolved as set forth in Article 11.b. or 11.c. as applicable.  If the Subcontractor prevails, Subcontractor's sole remedy shall be an equitable adjustment determined as provided in Article 11.b. or 11.c. as applicable.  In addition to notice required by Article 9.d. or the Contract Documents, notification of any claim for the equitable adjustment must be asserted in writing not later than ten (10) days after Subcontractor's knowledge of the claim, and if Article 11.b. is applicable, within sufficient time to allow Clark to give notice to the Owner under the Contract Documents.

b.  In case of any dispute between Clark and Subcontractor, in any way relating to or arising from any act or omission of the Owner or involving the Contract Documents, Subcontractor agrees to be bound to Clark to the same extent that Clark is bound to the Owner, by the terms of the Contract Documents, and by any and all preliminary and final decisions or determinations made thereunder by the party, board or court so authorized in the Contract Documents or by law, whether or not Subcontractor is a party to such proceedings.  In case of such dispute, Subcontractor will comply with all provisions of the Contract Documents allowing a reasonable time for Clark to analyze and forward to the Owner any required communications or documentation.  Clark will, at its option, (1) present to the Owner, in Clark's name, or (2) authorize Subcontractor to present to the Owner, in Clark's name, all of Subcontractor's claims and answer the Owner's claims involving Subcontractor's work, whenever Clark is permitted to do so by the terms of the Contract Documents.  Clark will further invoke on behalf of Subcontractor, or allow Subcontractor to invoke, those provisions in the Contract Documents for determining disputes.  Nothing herein shall require Clark to certify a claim under a government contract when it cannot do so in good faith.  If such dispute is prosecuted or defended by Clark, Subcontractor, at its own expense, agrees to furnish all documents, statements, witnesses, and other information required by Clark and to pay or reimburse Clark for all costs incurred by Clark in connection with the dispute including attorneys' fees.  The Subcontract price shall be adjusted by Subcontractor's allocable share determined in accordance with Article 9. hereof.

c.  To the extent not resolved under Article 11.b. above, any dispute between Clark and Subcontractor shall, at Clark's sole option, be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association.  If Clark elects to arbitrate, then the arbitration shall be in Montgomery County, Maryland.  The foregoing agreement to arbitrate shall be specifically enforceable in any court of competent jurisdiction.  Upon its request, Clark shall be entitled to consolidation or joinder of any arbitration involving Subcontractor with related arbitrations involving other parties.  The award rendered by the arbitrators shall be final and judgment may be entered upon it in accordance with applicable law in any court of competent jurisdiction.  If Clark notifies Subcontractor that Clark contends any arbitration or lawsuit brought under this Article 11.c. involves a controversy within the scope of Article 11.b., the dispute process shall be stayed until the procedures under Article 11.b. are completed.  In the event of any lawsuit under this clause, the Courts of Maryland shall have sole and exclusive jurisdiction.  DUE TO THE SPECIALIZED NATURE OF CONSTRUCTION LITIGATION, EACH PARTY HEREBY WAIVES ITS RIGHT TO A TRIAL BY JURY.  Subcontractor hereby consents to jurisdiction and venue in Maryland.

12.  Warranty

Subcontractor warrants its work hereunder to Clark on the same terms, and for the same period, as Clark warrants the work to the Owner under the Contract Documents; and, with respect to Subcontractor's work, Subcontractor shall assume all warranty obligations and responsibilities of Clark under the Contract Documents.

13.  Liens

a.  In the event that liens are filed by anyone in relation to the labor and/or material furnished pursuant to this Subcontract, Subcontractor agrees to have the same discharged, by posting a bond with the appropriate authorities, or otherwise, within three (3) days of notice.  In the event such lien is not so discharged, Clark may discharge the lien itself holding Subcontractor responsible for all costs and obligations incurred.

b.  Subcontractor shall, as part of each request for partial payment other than the initial request, furnish claim releases and lien waivers with respect to all work performed and materials supplied through the date of the immediately preceding request for partial payment.

c.  Prior to final payment, Subcontractor shall provide to Clark a release of its liens and claims and all liens and claims of all persons furnishing labor and/or materials for the performance of this Subcontract, and satisfactory evidence that there are no other liens or claims whatsoever outstanding against the work relating to this Subcontract.

14.  Inspection and Acceptance

a.  Subcontractor shall provide appropriate facilities at all reasonable times for inspection by Clark or the Owner of the work and materials provided under this Subcontract, whether at the Project site or any other place where such work or materials may be in preparation, manufacture, storage or installation. Subcontractor shall promptly replace or correct any work or materials which Clark or the Owner shall reject as failing to conform to the requirements of this Subcontract. If Subcontractor does not do so within a reasonable time, Clark shall have the right to do so and Subcontractor shall be liable to Clark for the cost thereof. If, in the opinion of Clark, it is not expedient to correct or replace all or any part of rejected work or materials, then Clark, at its option, may deduct from the payments due, or to become due, to Subcontractor, such amount as, in Clark's reasonable judgment, will represent (i) the difference between the fair value of the rejected work and materials and the value thereof if it complied with this Subcontract, or (ii) the cost of correction, whichever Clark determines is more appropriate.

b.  Subcontractor's remedy for wrongful rejection of work pursuant to Article 14.a. shall be limited to Clark's remedy under the Contract Documents if rejection is by the Owner or by Clark at request of the Owner. Clark shall be liable for any increased direct costs caused by its wrongful rejection of work if the Owner was not involved in said rejection.

c.  The work shall be accepted according to the terms of the Contract Documents. However, unless otherwise agreed in writing, entrance and use by the Owner or Clark, shall not constitute acceptance of the work.

15.  Inconsistencies and Omissions

Should inconsistencies or omissions appear in the Contract Documents, it shall be the duty of Subcontractor to timely notify Clark in writing. Upon receipt of said notice, Clark shall instruct Subcontractor as to the measures to be taken, and Subcontractor shall comply with Clark's instructions. Nothing herein shall bar Subcontractor's right to seek adjustment under Article 9.b. if allowable under the Contract Documents.

16.  Termination for Convenience

Clark shall have the right to terminate for convenience Subcontractor's performance of all or a part of the Subcontract work by providing Subcontractor with a written notice of termination for convenience, to be effective upon receipt by Subcontractor. If there has been a termination of Clark's contract with the Owner, the Subcontractor shall be paid the amount due from the Owner for its work, as provided in the Contract Documents, after payment therefor by the Owner to Clark. If Clark's contract has not been terminated, Subcontractor shall be paid the reasonable value of work performed by Subcontractor prior to termination plus reasonable direct close-out costs but in no event shall Subcontractor be entitled to unabsorbed overhead or anticipatory profit. If no work has been performed by Subcontractor at the time of termination, Subcontractor shall be paid the sum of $100.00 for its undertaking an obligation to perform.

17.  Approvals

a.  Subcontractor warrants and agrees that all requisite approvals from the Owner as to its eligibility to serve as a subcontractor and the approvals of all materials and performance of the work as required by the Contract Documents are obtainable.

b.  Subcontractor shall deliver to Clark copies of shop drawings, cuts, samples, material lists and other submissions required by Clark or the Contract Documents within sufficient time so as not to delay performance of the Project or within sufficient time for Clark to submit the same within the time stated in the Contract Documents, whichever is earlier. Submissions shall be in strict accordance with the Contract Documents, provided however, if Subcontractor wishes to propose a deviation from the Contract Documents, such deviation shall be clearly identified on the submission and accompanied by a letter describing such deviation in detail and the effect, if any, on Subcontractor's work and time of performance. Requested deviations will be allowed only when specific written approval referencing the deviation is given to Subcontractor. No general approval granted by Clark or the Owner shall relieve Subcontractor from complying with the Contract Documents.

c.  Clark's review of shop drawings, cuts, samples, material lists and other submissions shall not be construed as a complete check or approval nor shall it relieve the Subcontractor from responsibility for errors of any sort therein, or from the necessity of furnishing any work required by the Contract Documents which may have been omitted from the shop drawings, cuts, samples, material lists or other submissions.

18.  Cleanup

Subcontractor shall clean its work and remove all debris resulting from its work in a manner that will not impede either the progress of the Project or of other trades. Clark shall have the right to perform cleanup itself and charge Subcontractor the reasonable cost thereof including an allocation of the cost of cleanup not identifiable to any source.

19.  Assignment and Subcontracting

a.  Subcontractor shall not assign or transfer this Subcontract, or funds due hereunder, without the prior written consent of Subcontractor's surety and Clark. Clark shall not unreasonably withhold its consent to the assignment of funds due hereunder. Lower-tier subcontracts are subject to the provisions of this Subcontract, and Subcontractor shall insert in Subcontractor's subcontracts all provisions required by the Contract Documents or necessary to enable Subcontractor to comply with the terms hereof. Subcontracting by Subcontractor shall not abrogate any obligation of Subcontractor under this Subcontract.

b.  Subcontractor, by execution of this Subcontract, contingently assigns to Clark all Subcontractor's subcontracts. The assignment of each of Subcontractor's subcontracts shall take effect only upon Subcontractor's termination for default under Article 10.a. and Clark's affirmative acceptance of the assignment of the specific subcontract by written notice to Subcontractor and Subcontractor's subcontractor. Clark shall have no liability to any of Subcontractor's subcontractors unless and until Clark affirmatively accepts the assignment as provided above.

20.  Patents and Royalties

Except as otherwise provided by the Contract Documents, Subcontractor shall pay all royalties and license fees which may be due with respect to its work. Subcontractor shall defend all suits or claims for infringement of any patent rights that may be brought against Clark or the Owner arising out of its work, and shall be

liable to Clark and the Owner for all loss, including all costs and expenses, on account thereof.

21.  Taxes and Permits

a.  Except as otherwise provided by the Contract Documents, Subcontractor agrees to pay and comply with and hold Clark harmless against the payment of all Federal, state and local contributions, taxes, duties or premiums arising out of the performance of this Subcontract, and all sales, use or other duties or taxes of whatever nature levied or assessed against the Owner, Clark, or Subcontractor arising out of this Subcontract, including any interest or penalties. Subcontractor waives any and all claims for additional compensation because of any new duties or taxes or any increase in the aforementioned duties or taxes unless payment therefor is specifically provided for in the Contract Documents.

b.  Subcontractor shall obtain and pay for all permits, licenses, fees and certificates of inspection necessary for the prosecution and completion of work. Subcontractor shall arrange for all necessary inspections and approvals by public officials.

22.  Laws, Regulations and Ordinances

a.  Subcontractor shall be bound by, and, at its own cost, shall comply with all Federal, state and local laws, codes, ordinances and regulations applicable to this Subcontract and the performance of the work hereunder whether by reason of general law or by reason of provisions in the Contract Documents. Subcontractor and all lower-tier subcontractors shall be duly licensed to operate under the law of the applicable jurisdictions.

b.  Specifically and without limitation, Subcontractor and all employees and agents thereof shall comply with the applicable requirements issued pursuant to the Occupational Safety and Health Act of 1970, as amended, all other applicable health and safety laws and regulations, and all laws and regulations applicable to the hiring of aliens.

c.  Subcontractor shall be liable to Clark and the Owner for all loss, cost and expense attributable to any acts of commission or omission by Subcontractor, its employees and agents, and lower-tier subcontractors resulting from failure to comply with any Federal, state or local laws, codes, ordinances or regulations including, but not limited to, any fines, penalties or corrective measures.

d.  Unless otherwise provided in the Contract Documents, the terms and conditions of this Subcontract shall be interpreted in accordance with the laws of the jurisdiction where the Project is located.

23.  Safety

a.  Subcontractor's safety and health program for the Project shall incorporate, as a minimum, all of the policies and procedures of Clark's Project Safety and Health Program. Subcontractor acknowledges that it has an obligation to perform its work using safe and healthful methods and to comply with its company safety and health program and hazard communication (HAZCOM) program for the Project, the Project Documents, the Subcontract, the Occupational Safety and Health Administration standards, and all other federal, state, and local codes, laws, and regulations.

b.  Subcontractor accepts responsibility for the management and implementation of its company safety and health program and HAZCOM program for this Project and shall ensure that its employees, subcontractors and suppliers, regardless of tier, know, understand, properly implement and are held accountable for the complete project safety and health program requirements. Subcontractor assumes full responsibility to provide and maintain, within its scope of work, a safe and healthful workplace for its employees, as well as for the benefit of all contractors, fellow workers and the general public. Subcontractor agrees to assume the obligation to notify Clark of all hazards discovered that it does not control and did not create.

c.  Subcontractor shall be liable to Clark for any additional costs Clark incurs as a result of Subcontractor's failure to operate safely. Clark may conduct safety inspections from time to time. Such inspections shall not relieve Subcontractor from its obligations to adhere to safety requirements nor shall such inspections create any Clark liability. Copies of Clark's Safety and Health Program will be made available to Subcontractor upon request.

24.  Labor

a.  Should any workers performing work covered by this Subcontract engage in any strike or other work stoppage or cease to work due to picketing or a labor dispute of any kind, such circumstances shall, notwithstanding any provision of the Contract Documents, be deemed a failure to perform by Subcontractor and Clark's rights shall be governed by Articles 6 and 10 of the Subcontract Agreement.

b.  Subcontractor understands that Clark, other Subcontractors and/or other contractors of the Owner may employ both Union and Non-Union workers on the project. If required by the Contract Documents or specified in an Exhibit to this Subcontract, Subcontractor agrees to employ union labor.

c.  Subcontractor agrees, in the event of a labor dispute, to use all lawful means available under law, any applicable union agreement or project agreement to cure the dispute as quickly as possible so as to cause the minimum delay to the project. In the event the Subcontractor fails to act expeditiously, Clark may exercise any rights it may have under the law and the Subcontractor will indemnify Clark for any cost incurred.

25.  Equal Opportunity

a.  In connection with the performance of work under this Subcontract, Subcontractor agrees not to discriminate against any employee or applicant for employment because of race, religion, sex, color or national origin. The aforesaid provision shall include, but not be limited to, the following: employment, upgrading, demotion or transfer; recruitment advertising; layoff or termination; rates of pay or other forms of compensation; and selection for training, including apprenticeship. Subcontractor agrees to post hereafter, in conspicuous places, available for employees and applicants for employment, notices, prepared by Subcontractor, and approved by the government when required, setting forth the provisions of this Article 25.

b.  Subcontractor shall permit access to its books, records and accounts by representatives of Clark or the Owner for purposes of investigation to ascertain compliance with the provisions of this Article 25.

c. In the event of Subcontractor's noncompliance with the equal opportunity provisions of this Subcontract, this Subcontract may be terminated for default.

d. Subcontractor shall include the provisions of this Article 25. in Subcontractor's subcontracts. The requirements of this Article 25., shall be in addition to any Equal Opportunity provisions of the Contract Documents.

26. Information Required by Owner

In addition to the information to be provided by Subcontractor pursuant to other provisions of this Subcontract, Subcontractor hereby agrees to provide, at no additional cost to Clark, and in a prompt and timely fashion so as not to disrupt the performance of this Subcontract or the contract between Clark and the Owner, any and all additional information relating to this Subcontract which is required either by the Contract Documents or by law.

27. Privity

Until Subcontractor's obligations under this Subcontract are completely fulfilled, Subcontractor agrees not to perform any work directly for the Owner or any of its tenants or deal directly with the Owner's representatives in connection with the Project, unless otherwise directed in writing by Clark. All work for this Project performed by Subcontractor shall be processed and handled exclusively by Clark.

28. Notices

All notices shall be addressed to the parties at the addresses set out herein, and shall be considered as delivered when postmarked if dispatched by registered or certified mail, when confirmed if sent by telegram or telecopy, when signed for when delivered by hand, and when received in all other cases.

29. Severability and Waiver

The partial or complete invalidity of any one or more provisions of this Subcontract shall not affect the validity or continuing force and effect of any other provision. If any provision is invalid, in whole or in part, the provision shall be considered reformed to reflect the intent thereof to the greatest extent possible consistent with law. The failure of either party to insist, in any one or more instances, upon the performance of any of the terms, covenants, or conditions of this Subcontract, or to exercise any right herein, shall not be construed as a waiver or relinquishment of such term, covenant, condition or right as respects further performance.

30. Interpretation of Contract Documents

a. It is the intention of the parties that all terms of this Subcontract are to be considered as complementary. However, in the event that such an interpretation is not possible, the order of precedence of the documents forming this Subcontract shall be (1) modifications of any documents forming part of this Subcontract; (2) this Subcontract, unless the Contract Documents impose a higher standard or greater requirement on Subcontractor, in which case the Contract Documents; (3) the Contract Documents, unless the provisions of (2) apply.

b. In the event of a conflict between or among modifications, the later in date shall prevail; in the event of a conflict between or among the terms of this Subcontract, the higher standard or greater requirement for Subcontractor shall prevail; and in the event of a conflict between or among the terms of the Contract Documents, the higher standard or greater requirement for Subcontractor shall prevail.

c. Except as otherwise provided, all references herein to days shall be to calendar days.

d. The term "Subcontractor's subcontractor" shall mean any subcontractor, vendor or materialman who is supplying material or performing work in connection with the Subcontract and who has a direct contractual relationship with Subcontractor. The term "lower-tier subcontractor" shall mean any subcontractor, vendor or materialman at any tier supplying material or performing work in connection with the Subcontract. The term "subcontract" when referencing contractual arrangements between Subcontractor and Subcontractor's subcontractor shall include purchase orders and contracts for construction, materials and/or services relating to the Project.

e. Termination under Articles 10. or 16. shall not relieve Subcontractor from obligations in connection with work performed prior to termination or abrogate any provisions herein dealing with resolution of disputes.

31. Advertising - Signs

Subcontractor, lower-tier subcontractors, and their employees shall not take photographs of the work on site, publish or display advertising matter of any description relating to the Project, or display signs at or near the Project without first obtaining the written consent of Clark and the Owner.

32. Fitness for Duty Policy

a. Subcontractor shall adopt Clark's Fitness for Duty Policy or a substantially similar policy for its own employees, agents and representatives who come onto the job site and shall require its subcontractors and suppliers of any tier who come onto the job site to do likewise.

b. If Subcontractor, or any who comes onto the job site under an employment or a direct or indirect contractual arrangement with Subcontractor, fails to enforce the Clark Fitness for Duty Policy or a substantially similar policy, Clark reserves the right to bar such party from the job site. Any resulting damage (including damage for delay) will be the responsibility of Subcontractor.

c. Subcontractor certifies that all employees who will work on the Project, as a minimum, passed a pre-hire drug test consistent with the test required by Clark's Fitness for Duty Policy. Copies of Clark's Fitness for Duty Policy will be made available to Subcontractor upon request.

33. **Additional Provisions**

See Exhibits D, G and I for additional conditions of this Subcontract.

(this space left intentionally blank)

IN WITNESS WHEREOF, the parties, by their duly authorized representatives, have hereunto executed this Subcontract, on the day and year above written.

**CLARK CONCRETE CONTRACTORS LLC**
(Subcontractor)

By: _____ 9/29/03

Print name: _____

Title: _____        Date

_____
Attest

**Clark Quincy Park, LLC**
(Clark)

By: _____ 9/30/03

_____
Christy Jenkins
Attest

By: C. Neal Fleming, Jr.        Date
    Manager



QUINCY PARK CONDOMINIUM PROJECT
WASHINGTON, D.C.

## EXHIBIT A
(8/13/03)

1. Owner Contractor Agreement dated June 23, 2003

2. Miscellaneous Documents:

| Description | Source |
|---|---|
| Geotechnical Engineering Report | Schnabel Engineering Assoc's, Inc. |

3. Specifications prepared by Esocoff & Associates:

| SECTION | TITLE | DATE | NOTES |
|---|---|---|---|
| **Division 1 - General Requirements** | | | |
| 01100 | Summary | May 1, 2003 | Issued for Construction |
| 01250 | Contract Modification Procedures | May 1, 2003 | Issued for Construction |
| 01290 | Payment Procedures | May 1, 2003 | Issued for Construction |
| 01310 | Project Management and Coordination | May 1, 2003 | Issued for Construction |
| 01320 | Construction Progress Documentation | May 1, 2003 | Issued for Construction |
| 01330 | Submittal Procedures | May 1, 2003 | Issued for Construction |
| 01420 | References | May 1, 2003 | Issued for Construction |
| 01430 | Quality Assurance | May 1, 2003 | Issued for Construction |
| 01450 | Quality Control | May 1, 2003 | Issued for Construction |
| 01510 | Temporary Utilities | May 1, 2003 | Issued for Construction |
| 01520 | Construction Facilities | May 1, 2003 | Issued for Construction |
| 01540 | Construction Aids | May 1, 2003 | Issued for Construction |
| 01550 | Vehicular Access and Parking | May 1, 2003 | Issued for Construction |
| 01560 | Temporary Barriers and Enclosures | May 1, 2003 | Issued for Construction |
| 01570 | Temporary Controls | May 1, 2003 | Issued for Construction |
| 01580 | Project Identification | May 1, 2003 | Issued for Construction |
| 01610 | Product Requirements and Options | May 1, 2003 | Issued for Construction |
| 01630 | Product Substitution Procedures | May 1, 2003 | Issued for Construction |
| | Substitution Request Form | May 1, 2003 | Issued for Construction |
| 01650 | Product Delivery, Storage and Handling | May 1, 2003 | Issued for Construction |
| 01720 | Field Engineering | May 1, 2003 | Issued for Construction |
| 01733 | Application, Installation and Erection | May 1, 2003 | Issued for Construction |
| 01736 | Cutting and Patching | May 1, 2003 | Issued for Construction |
| 01740 | Cleaning | May 1, 2003 | Issued for Construction |
| 01760 | Protecting Installed Construction | May 1, 2003 | Issued for Construction |
| 01770 | Project Closeout | May 1, 2003 | Issued for Construction |
| 01780 | Closeout Submittals | May 1, 2003 | Issued for Construction |
| 01785 | Product Warranties | May 1, 2003 | Issued for Construction |
| **Division 2 Site - Construction** | | | |
| 02111 | Existing Tree Protection | May 1, 2003 | Issued for Construction |



QUINCY PARK CONDOMINIUM PROJECT
WASHINGTON, D.C.

## EXHIBIT A
### (8/13/03)

| | | | |
|---|---|---|---|
| 02221 | Building Demolition | May 8, 2003 | Issued for Construction |
| 02230 | Site Clearing | May 8, 2003 | Issued for Construction |
| 02240 | Dewatering | May 8, 2003 | Issued for Construction |
| 02300 | Earthwork | May 8, 2003 | Issued for Construction |
| 02510 | Water Distribution | May 8, 2003 | Issued for Construction |
| 02530 | Sanitary Sewerage | May 8, 2003 | Issued for Construction |
| 02630 | Storm Drainage | May 8, 2003 | Issued for Construction |
| 02741 | Hot-Mix Asphalt Paving | May 8, 2003 | Issued for Construction |
| 02751 | Cement Concrete Paving | May 8, 2003 | Issued for Construction |
| 02760 | Pavement Marking | May 1, 2003 | Issued for Construction |
| 02764 | Pavement Joint Sealants | May 8, 2003 | Issued for Construction |
| 02810 | Irrigation System | July 18, 2003 | Issued for Construction |
| 02821 | Chain-Link Fences and Gates | May 8, 2003 | Issued for Construction |
| 02950 | Planting | May 1, 2003 | Issued for Construction |

**Division 3 - Concrete**

| | | | |
|---|---|---|---|
| 03100 | Concrete Forms and Accessories | May 1, 2003 | Issued for Construction |
| 03200 | Concrete Reinforcement | May 1, 2003 | Issued for Construction |
| 03300 | Cast-In-Place Concrete | May 1, 2003 | Issued for Construction |
| 03380 | Post-Tensioned Concrete | May 1, 2003 | Issued for Construction |
| 03450 | Architectural Precast Concrete | May 1, 2003 | Issued for Construction |

**Division 4 - Masonry**

| | | | |
|---|---|---|---|
| 04100 | Mortar and Grout | May 1, 2003 | Issued for Construction |
| 04200 | Unit Masonry | May 1, 2003 | Issued for Construction |
| 04270 | Glass Unit Masonry | May 1, 2003 | Issued for Construction |
| 04850 | Stone Assemblies | May 1, 2003 | Issued for Construction |

**Division 5 - Metals**

| | | | |
|---|---|---|---|
| 05410 | Cold-Formed Metal Framing | May 1, 2003 | Issued for Construction |
| 05500 | Metal Fabrications | May 1, 2003 | Issued for Construction |
| 05520 | Handrails and Railings | May 1, 2003 | Issued for Construction |

**Division 6 - Wood And Plastics**

| | | | |
|---|---|---|---|
| 06100 | Rough Carpentry | May 1, 2003 | Issued for Construction |
| 06415 | Countertops | May 1, 2003 | Issued for Construction |
| 06420 | Flush Wood Paneling | May 1, 2003 | Issued for Construction |
| 06480 | Closet and Storage Shelving | May 1, 2003 | Issued for Construction |

**Division 7 - Thermal And Moisture Protection**

| | | | |
|---|---|---|---|
| 07110 | Damproofing | May 21, 2003 | Issued for Construction |
| 07140 | Fluid Applied Waterproofing | May 1, 2003 | Issued for Construction |
| 07160 | Cementitious Waterproofing | May 1, 2003 | Issued for Construction |

**CLARK**
QUINCY PARK

QUINCY PARK PROJECT
WASHINGTON, D.C.

## EXHIBIT A
(8/13/03)

| | | | |
|---|---|---|---|
| 07170 | Bentonite Waterproofing | May 1, 2003 | Issued for Construction |
| 07180 | Traffic Toppings | May 1, 2003 | Issued for Construction |
| 07210 | Building Insulation | May 1, 2003 | Issued for Construction |
| 07560 | Fluid Applied Membrane Roofing | May 1, 2003 | Issued for Construction |
| 07620 | Sheet Metal Flashing and Trim | May 1, 2003 | Issued for Construction |
| 07720 | Roof Accessories | May 1, 2003 | Issued for Construction |
| 07730 | Roof-Top Equipment Screen | May 1, 2003 | Issued for Construction |
| 07840 | Firestopping | May 1, 2003 | Issued for Construction |
| 07920 | Joint Sealants | May 1, 2003 | Issued for Construction |

**Division 8 - Doors And Windows**

| | | | |
|---|---|---|---|
| 08110 | Steel Doors and Frames | May 1, 2003 | Issued for Construction |
| 08120 | Aluminum Terrace Doors | May 1, 2003 | Issued for Construction |
| 08210 | Flush Wood Doors | May 1, 2003 | Issued for Construction |
| 08215 | Stile and Rail Wood Doors | May 1, 2003 | Issued for Construction |
| 08250 | Pre-Hung Wood Doors | May 1, 2003 | Issued for Construction |
| 08310 | Access Doors | May 1, 2003 | Issued for Construction |
| 08330 | Overhead Coiling Doors | May 1, 2003 | Issued for Construction |
| 08410 | Aluminum-Framed Storefronts | May 1, 2003 | Issued for Construction |
| 08520 | Aluminum Windows | May 1, 2003 | Issued for Construction |
| 08710 | Door Hardware | May 1, 2003 | Issued for Construction |
| 08711 | Door Hardware Schedule | May 1, 2003 | Issued for Construction |
| 08810 | Glass | May 1, 2003 | Issued for Construction |

**Division 9 - Finishes**

| | | | |
|---|---|---|---|
| 09210 | Acoustical Plaster | May 1, 2003 | Issued for Construction |
| 09250 | Gypsum Board | May 1, 2003 | Issued for Construction |
| 09255 | Gypsum Sheathing | May 1, 2003 | Issued for Construction |
| 09300 | Tile | May 1, 2003 | Issued for Construction |
| 09510 | Acoustical Ceilings | May 1, 2003 | Issued for Construction |
| 09545 | Metal Panel Ceilings | May 1, 2003 | Issued for Construction |
| 09630 | Stone Flooring | May 1, 2003 | Issued for Construction |
| 09640 | Wood Flooring | May 1, 2003 | Issued for Construction |
| 09650 | Resilient Flooring and Base | May 1, 2003 | Issued for Construction |
| 09680 | Carpet | May 1, 2003 | Issued for Construction |
| 09910 | Paints | May 1, 2003 | Issued for Construction |
| 09970 | Coating Systems for Steel | May 1, 2003 | Issued for Construction |
| 09980 | Coatings for Concrete and Masonry | May 1, 2003 | Issued for Construction |

**Division 10 - Specialties**

| | | | |
|---|---|---|---|
| 10210 | Metal Wall Louvers | May 1, 2003 | Issued for Construction |
| 10520 | Fire Protection Specialties | May 1, 2003 | Issued for Construction |
| 10535 | Awnings | May 21, 2003 | Issued for Construction |

**CLARK**
QUINCY PARK

QUINCY PARK MAIN PROJECT
WASHINGTON, D.C.

## EXHIBIT A
(8/13/03)

| | | | |
|---|---|---|---|
| 10550 | Postal Specialties | May 1, 2003 | Issued for Construction |
| 10605 | Wire Mesh Partitions | May 1, 2003 | Issued for Construction |
| 10815 | Toilet and Bath Accessories | May 1, 2003 | Issued for Construction |
| 10825 | Shower Enclosures | May 1, 2003 | Issued for Construction |
| | | | |
| **Division 11 - Equipment** | | | |
| 11015 | Window Washing System | May 1, 2003 | Issued for Construction |
| 11165 | Dock Bumpers | May 1, 2003 | Issued for Construction |
| 11170 | Trash Chutes | May 1, 2003 | Issued for Construction |
| | | | |
| **Division 12 - Furnishings** | | | |
| 12320 | Manufactured Wood Casework | May 1, 2003 | Issued for Construction |
| 12480 | Walk-Off Mats | May 1, 2003 | Issued for Construction |
| | | | |
| **Division 13 - Special Construction** | | | |
| | Not Used | | |
| | | | |
| **Division 14 - Conveying Systems prepared by: Lerch, & Associates Inc. Elevator Consulting Group** | | | |
| 14210 | Electric Traction Elevators | July 18, 2003 | Issued for Construction |
| | | | |
| **Division 15 - Mechanical** | | | |
| 15010 | Mechanical General | July 18, 2003 | Issued for Construction |
| 15050 | Basic Materials and Methods, Mechanical | May 8, 2003 | Issued for Construction |
| 15180 | Insulation: Mechanical | May 8, 2003 | Issued for Construction |
| 15200 | Noise and Vibration Control | May 8, 2003 | Issued for Construction |
| 15400 | Plumbing | July 18, 2003 | Issued for Construction |
| 15500 | Automatic Sprinkler and Standpipe Fire Protection System | May 8, 2003 | Issued for Construction |
| 15600 | Refrigeration | May 8, 2003 | Issued for Construction |
| 15650 | Heating | May 8, 2003 | Issued for Construction |
| 15697 | Water Treatment | May 8, 2003 | Issued for Construction |
| 15800 | HVAC System | May 8, 2003 | Issued for Construction |
| 15900 | Automatic Control Systems | May 8, 2003 | Issued for Construction |
| 15925 | Building Automation System Energy Management System (EMS) | May 8, 2003 | Issued for Construction |
| 15950 | Air Balancing | May 8, 2003 | Issued for Construction |
| 15975 | Systems Demonstration (Commissioning) | May 8, 2003 | Issued for Construction |
| | | | |
| **Division 16 - Electrical** | | | |
| 16010 | Electrical Work General | May 8, 2003 | Issued for Construction |
| 16050 | Electrical Basic Material and Method | July 18, 2003 | Issued for Construction |
| 16163 | Electrical Distribution Equipment | May 8, 2003 | Issued for Construction |
| 16210 | Emergency Generator | May 8, 2003 | Issued for Construction |

**CLARK**
QUINCY PARK

QUINCY PARK CONDOMINIUM PROJECT
WASHINGTON, D.C.

## EXHIBIT A
(8/13/03)

| | | | |
|---|---|---|---|
| 16500 | Lighting | May 8, 2003 | Issued for Construction |
| 16721 | High-Rise Fire Alarm System | July 18, 2003 | Issued for Construction |

4.  Drawings prepared by Esocoff & Associates:

| DRAWING | TITLE | DATE | NOTES |
|---|---|---|---|
| **Title Sheet** | | | |
| T100 | Cover Sheet | July 18, 2003 | Issued for Construction |
| T101 | Code Data | July 18, 2003 | Issued for Construction |
| | | | |
| **Civil** | | | |
| C1 | Existing Conditions & Demolition Plan | July 18, 2003 | Issued for Construction |
| C2 | Construction Notes Drainage & Utilities Plan | July 18, 2003 | Issued for Construction |
| C3 | Sediment & Erosion Control Plan | July 18, 2003 | Issued for Construction |
| C4 | Sediment & Erosion Notes & Details | July 18, 2003 | Issued for Construction |
| C5 | Sand Filter Calculations | July 18, 2003 | Issued for Construction |
| C6 | Sand Filter Details | July 18, 2003 | Issued for Construction |
| C7 | Storm, Water & Sewer Profiles & Schedules | July 18, 2003 | Issued for Construction |
| C8 | Sanitary & Water Details & Utility Notes | July 18, 2003 | Issued for Construction |
| C9 | Sidewalk & Curb Details | July 18, 2003 | Issued for Construction |
| | | | |
| **Architectural** | | | |
| A101 | Site Plan | July 18, 2003 | Issued for Construction |
| A102 | Architectural Site Plan & Site Details | July 18, 2003 | Issued for Construction |
| A103 | Detailed Plan and Section | July 18, 2003 | Issued for Construction |
| A110 | Column Plan Segment 1 | July 18, 2003 | Issued for Construction |
| A111 | Column Plan Segment 2 | July 18, 2003 | Issued for Construction |
| A111a | Slab Edge Parking Level 1 & 2 | July 18, 2003 | Issued for Construction |
| A112 | Slab Edge Ground & Second Floors | July 18, 2003 | Issued for Construction |
| A113 | Slab Edge Third & Fourth Floors | July 18, 2003 | Issued for Construction |
| A114 | Slab Edge Fifth & Sixth Floors | July 18, 2003 | Issued for Construction |
| A115 | Slab Edge Seventh Thru Ninth Floors & Roof Levels | July 18, 2003 | Issued for Construction |
| A201 | Floor Plans Parking Levels 1 & 2 | July 18, 2003 | Issued for Construction |
| A202 | Floor Plans Ground & Second Floors | July 18, 2003 | Issued for Construction |
| A203 | Floor Plans Third & Fourth Floors | July 18, 2003 | Issued for Construction |
| A204 | Floor Plans Fifth Thru Ninth Floors | July 18, 2003 | Issued for Construction |
| A205 | Floor Plans Roof Levels | July 18, 2003 | Issued for Construction |
| A251 | Reflected Ceiling Plans Parking Level 1 & Ground Floor | July 18, 2003 | Issued for Construction |
| A252 | Reflected Ceiling Plans Second & Typical Floors | July 18, 2003 | Issued for Construction |
| A253 | Reflected Ceiling Plans Ninth Floor | July 18, 2003 | Issued for Construction |
| A301 | Building Elevations East & South | July 18, 2003 | Issued for Construction |
| A302 | Building Elevations West, North &Penthouse | July 18, 2003 | Issued for Construction |
| A311 | Building Sections A-A & B-B | July 18, 2003 | Issued for Construction |

**QUINCY PARK** MINI-PROJECT
WASHINGTON, D.C.

## EXHIBIT A
### (8/13/03)

| | | | |
|---|---|---|---|
| A312 | Building Sections C-C & D-D | July 18, 2003 | Issued for Construction |
| A313 | Building Sections F-F | July 18, 2003 | Issued for Construction |
| A314 | Penthouse Sections | July 18, 2003 | Issued for Construction |
| A321 | Enlarged East Sections, Elevation & Plans Segment1 | July 18, 2003 | Issued for Construction |
| A322 | Enlarged East Sections, Elevation & Plans Segment2 | July 18, 2003 | Issued for Construction |
| A323 | Enlarged South Sections, Elevation & Plans | July 18, 2003 | Issued for Construction |
| A401 | 1/4" Ground Floor Plan | July 18, 2003 | Issued for Construction |
| A402 | 1/4" Typical Floor Plan | July 18, 2003 | Issued for Construction |
| A501 | Kitchen Plans and Elevations | July 18, 2003 | Issued for Construction |
| A510 | Bathroom Details | July 18, 2003 | Issued for Construction |
| A511 | Bathroom Plans and Elevations | July 18, 2003 | Issued for Construction |
| A512 | Bathroom Plans and Elevations | July 18, 2003 | Issued for Construction |
| A520 | Misc. Interior Details | July 18, 2003 | Issued for Construction |
| A601 | Plans & Sections Stair 1 | July 18, 2003 | Issued for Construction |
| A602 | Plans & Sections Stair 2,3 | July 18, 2003 | Issued for Construction |
| A651 | Elevator Cab Plans & Elevations | July 18, 2003 | Issued for Construction |
| A701 | Interior Partition Types | July 18, 2003 | Issued for Construction |
| A710 | Door Schedule & Details | July 18, 2003 | Issued for Construction |
| A720 | Window & Louver Schedule | July 18, 2003 | Issued for Construction |
| A750 | Finish Schedule | July 18, 2003 | Issued for Construction |
| A751 | Finish Schedule | July 18, 2003 | Issued for Construction |
| A752 | Finish Schedule Key | July 18, 2003 | Issued for Construction |
| A801 | Typical Details | July 18, 2003 | Issued for Construction |
| A802 | Typical Details | July 18, 2003 | Issued for Construction |
| A803 | Typical Roof Details | July 18, 2003 | Issued for Construction |
| A804 | Typical Foundation Details | July 18, 2003 | Issued for Construction |
| A811 | Exterior Wall Plan Details | July 18, 2003 | Issued for Construction |
| A812 | Exterior Wall Plan Details | July 18, 2003 | Issued for Construction |
| A813 | Exterior Wall Plan Details | July 18, 2003 | Issued for Construction |
| A820 | Exterior Wall Section Details | July 18, 2003 | Issued for Construction |
| A821 | Exterior Wall Section Details | July 18, 2003 | Issued for Construction |
| A822 | Exterior Wall Section Details | July 18, 2003 | Issued for Construction |
| A823 | Exterior Wall Section Details | July 18, 2003 | Issued for Construction |
| A824 | Exterior Wall Section Details | July 18, 2003 | Issued for Construction |
| A825 | Exterior Wall Section, Plan & Elevation Details | July 18, 2003 | Issued for Construction |

**Landscaping**

| | | | |
|---|---|---|---|
| L1.01 | Planting Plan | July 18, 2003 | Issued for Construction |
| L2.01 | Irrigation Plan | July 18, 2003 | Issued for Construction |

**Structural**

| | | | |
|---|---|---|---|
| S101 | Foundation / Level 2 Plan Parking Level 1 Framing Plan | July 18, 2003 | Issued for Construction |
| S102 | Ground & 2nd Floors Framing Plan | July 18, 2003 | Issued for Construction |

**CLARK**
QUINCY PARK

## EXHIBIT A
### (8/13/03)

| | | | |
|---|---|---|---|
| S103 | Third & Fourth Floors Framing Plan | July 18, 2003 | Issued for Construction |
| S104 | Fifth Thru Ninth Floors Framing Plan | July 18, 2003 | Issued for Construction |
| S105 | Main Roof, Elev. Mach. Room Floor And Penthouse Roof Framing Plans | July 18, 2003 | Issued for Construction |
| S201 | Column and Beam Schedule | July 18, 2003 | Issued for Construction |
| S202 | Concrete Beam Schedule | July 18, 2003 | Issued for Construction |
| S301 | Sections | July 18, 2003 | Issued for Construction |
| S302 | Sections | July 18, 2003 | Issued for Construction |
| S303 | Sections and Details | July 18, 2003 | Issued for Construction |
| S304 | Sections and Details | July 18, 2003 | Issued for Construction |
| S305 | Sections and Details | July 18, 2003 | Issued for Construction |
| S306 | Stair Sections and Details | July 18, 2003 | Issued for Construction |
| S307 | Sections and Details | July 18, 2003 | Issued for Construction |
| S308 | Sections and Details | July 18, 2003 | Issued for Construction |
| S309 | Sections and Details | July 18, 2003 | Issued for Construction |
| S401 | Typical Details | July 18, 2003 | Issued for Construction |
| S402 | Typical Details | July 18, 2003 | Issued for Construction |

**Plumbing**

| | | | |
|---|---|---|---|
| P-1 | Plumbing Symbols Details, Schedules and Notes | July 18, 2003 | Issued for Construction |
| P-2 | Levels P1 and P2 Plumbing Plans | July 18, 2003 | Issued for Construction |
| P-3 | Ground Floor and 2nd Floor Plumbing Plans | July 18, 2003 | Issued for Construction |
| P-4 | Typical 3rd Thru 8th And 9th Floor Plumbing Plans | July 18, 2003 | Issued for Construction |
| P-5 | Roof Plumbing Plan | July 18, 2003 | Issued for Construction |
| P-6 | Plumbing Sanitary Riser Diagrams | July 18, 2003 | Issued for Construction |
| P-7 | Plumbing Sanitary Riser Diagrams | July 18, 2003 | Issued for Construction |
| P-8 | Plumbing Sanitary Riser Diagrams | July 18, 2003 | Issued for Construction |
| P-9 | Domestic Water Riser Diagram Plumbing | July 18, 2003 | Issued for Construction |
| P-10 | Domestic Water Riser Diagram Plumbing | July 18, 2003 | Issued for Construction |
| P-11 | Domestic Water Riser Diagram Plumbing | July 18, 2003 | Issued for Construction |
| P-12 | Domestic Water Riser Diagram Plumbing | July 18, 2003 | Issued for Construction |
| P-13 | Domestic Water Riser Diagram Plumbing | July 18, 2003 | Issued for Construction |
| P-14 | Natural Gas Riser Diagram Plumbing | July 18, 2003 | Issued for Construction |
| P-15 | Storm Drainage Riser Diagram Plumbing | July 18, 2003 | Issued for Construction |
| P-16 | Fire Protection Riser Diagram Plumbing | July 18, 2003 | Issued for Construction |

**Electrical**

| | | | |
|---|---|---|---|
| E-1 | Electrical Symbols Abbreviations, Notes and Light Fixture Schedule | July 18, 2003 | Issued for Construction |
| E-2 | Parking Level P2 and Parking Level P1 Electrical Plan | July 18, 2003 | Issued for Construction |
| E-3 | First Floor and Second Floor Electrical Plan | July 18, 2003 | Issued for Construction |
| E-4 | Typical Floor (3rd To 8th) And 9th Floor | July 18, 2003 | Issued for Construction |
| E-5 | Roof/Penthouse Electrical Plan | July 18, 2003 | Issued for Construction |

# EXHIBIT A
### (8/13/03)

| | | | |
|---|---|---|---|
| E-6 | Typical 1/4" Scale Condo Layouts | July 18, 2003 | Issued for Construction |
| E-7 | Power Riser Diagram | July 18, 2003 | Issued for Construction |
| E-9 | Fire Alarm Riser and Telecom Riser | July 18, 2003 | Issued for Construction |
| E-8 | Main Electric Room, Pump Room, Telephone Room and Switchboard Detail Plan | July 18, 2003 | Issued for Construction |
| E-10 | Fire Alarm Annunciator Detail, System Matrix and Notes | July 18, 2003 | Issued for Construction |
| E-11 | Panel Schedules | July 18, 2003 | Issued for Construction |

**Mechanical**

| | | | |
|---|---|---|---|
| M-1 | Mechanical Title Sheet | July 18, 2003 | Issued for Construction |
| M-2 | Garage Levels P2 and P1 Mechanical Plans | July 18, 2003 | Issued for Construction |
| M-3 | Ground and 2nd Floor Mechanical Plans | July 18, 2003 | Issued for Construction |
| M-4 | Typical Floor (3-8) and 9th Floor Mechanical Plans | July 18, 2003 | Issued for Construction |
| M-5 | Penthouse and Roof Mechanical Plans | July 18, 2003 | Issued for Construction |
| M-6 | Mechanical Riser Diagrams | July 18, 2003 | Issued for Construction |
| M-7 | Mechanical Schedules and Details | July 18, 2003 | Issued for Construction |
| M-8 | Mechanical Details | July 18, 2003 | Issued for Construction |
| M-9 | Mechanical Riser Diagrams Details | July 18, 2003 | Issued for Construction |

**Vertical Transportation**

| | | | |
|---|---|---|---|
| VT01 | General Elevator Information | July 18, 2003 | Issued for Construction |
| VT02 | Pit, Hoistway, Machine Room Plans and Hoistway Section Elevators 1 & 2 | July 18, 2003 | Issued for Construction |



CLARK CONCRETE CONTRACTORS LLC
Subcontract Agreement Dated: September 17, 2003
*Revised: September 24, 2003*

## EXHIBIT B

Provide all labor, material and equipment to fully execute the requirements to furnish, deliver and install the following work in accordance with the Contract Documents listed in Exhibit A:

> **SECTION 03100 - CONCRETE FORMS & ACCESSORIES**
> **SECTION 03200 - CONCRETE REINFORCEMENT**
> **SECTION 03300 - CAST-IN-PLACE CONCRETE**
> **SECTION 03380 - POST-TENSION CONCRETE**

This Subcontract shall include, but is not limited to, the items listed below:

1.  Engineering and layout for our work from control lines and benchmarks established by others.

2.  Curing of concrete as required by the Contract Documents. No curing compound or other substances that may adversely affect adhesion or bonding will be used or applied in areas where flash patching, setting beds, tile or other subsequent finishes require such adhesion or bonding.

3.  Box out forming and grouting of elevator sills.

4.  Provide box-outs for steel bearing plates, elevator sheave beams, pre-cast concrete/stone anchorage, architectural expansion joints, etc. as required by the Contract Documents.

5.  Furnishing and installation of wire mesh, reinforcing steel, post-tension cables and accessories for work covered by this scope of work.

6.  Layout and installation of embedded plates, angles, wedge type inserts and anchor bolts in accordance with the Contract Documents.

7.  Receive, unload, inventory (concurrently with base operations), embedded items furnished by others.  Embeds shall be delivered to this subcontractor in containers which can be safely hoisted. Embeds shall be provided with a minimum of two predrilled 3/16" diameter holes. Embeds shall be identified and delivered to the jobsite with placement "approved shop drawings", a minimum of ten (10) work days prior to the scheduled installation date for coordination and installation. Set pipe bollards in concrete footings and fill bollards with concrete. Bollards, which are anchor bolted into place, will be set by others and filled with concrete by Subcontractor.

8.  Furnish and install concrete control joints, fiber expansion joints, dovetail brick slots, embedded flashing reglets and concrete water stops.



CLARK CONCRETE CONTRACTORS LLC
Subcontract Agreement Dated: September 17, 2003
*Revised: September 24, 2003*

## EXHIBIT B

9.    Mechanical and electrical equipment pads on structure. Pads are to be laid out by others the day after deck/slab is cast.

10.   Cast-in place concrete work for the elevator sump pits.

11.   Miscellaneous concrete toppings, fills, curbs, depressions, etc. on structure only.

12.   Concrete liquid hardener at exposed rooms and floor spaces per finish schedule.

13.   Special slab finishes (such as floated or broom finishing at thin set tile areas) as required by the Contract Documents.

14.   Prepare concrete ceilings to receive special coatings or painting, including grinding of offsets and fins and fill voids per concrete specifications.

15.   Provide casual labor and minor materials to assist Testing and Inspection Agency. Testing for this Subcontractor's convenience is the responsibility of this Subcontractor. Provide a cylinder cure box for the testing agency's use.

16.   Tower crane foundation including design, excavation, reinforcing and concrete. Tower crane pad will be left in place.

17.   Permits and fees for the tower crane, temporary heat, and after hours work, as may be required.

18.   Vapor barrier and gravel below slab on grade, including fine grading from sub grade at +/- 0.2' (fine grading does *not* include machine work or substantial earthwork. Subgrade shall be prepared by others so that no imported material or spoils removal is required during the fine grading). Trenching and backfilling of underground piping and utilities below slabs on grade is by others.

19.   Daily clean up of all trash and debris resulting from your work and removal from the project site. Dumpster pulls for material debris generated by other trades are excluded.

20.   Coordinate our work in accordance with the earth support system shop drawings SE-1, SE-2 & SE-5 dated 2/24/03, SE-3 & SE-4 dated 06/25/03, prepared by Clark Foundations including additional concrete required due to on-line sheeting and shoring tolerance of ±3 inches.

21.   Two-sided foundation wall forms are included only where slope cut is specifically indicated on the earth support shop drawings.



## EXHIBIT B

22.    Where tie-backs, walers, rakers are indicated, include provisions to box out and patch these openings. Sheeting waler design to be offset allowing for the use of gang wall forming system. No blockouts for waler penetrations will be required beyond those indicated on the sheeting and shoring shop-drawings referenced above.

23.    Provide overhead protection for your work during stripping operations only.

24.    Subcontractor will fabricate opening boxes from lists provided by the other trades for final positioning and installation on decks by others. Stripping of the trade passage sleeves and boxes will be by others.

25.    Provide covers for all small framed openings in decks such as ductwork shafts, pipe chases, etc. during our operations. Covers to be maintained by others after concrete work is complete in the area, and removed by others. Covers over sleeve penetrations are not included.

26.    Furnish and install safety provisions only while performing your work at each level. Perimeter safety rails, if required, will be installed by this Subcontractor on levels only where this Subcontractor's major work is in progress, and until forms are removed (safety rails will not be provided by Subcontractor during the period between formwork stripping and reshore removal). Furnishing of safety cables after stripping of forms is included, however installation and grouting is by others.

27.    Provide flagmen for street closings, traffic control, and traffic cones as required for your work.

28.    Pumping of rainwater for your work if required.

29.    Furnish, deliver, and unload reinforcing steel to an area designated by Clark, for installation in masonry by others. Masonry reinforcing steel will be delivered in a sequence, which shall allow for full truck load deliveries.

30.    Furnish and install embedded dowels in new concrete for the masonry work.

31.    Provide concrete bond breakers.

32.    Provide labor and material for weep holes.

33.    Coordinate your work with Clark and other subcontractors to meet the Job Progress Schedule.

34.    Provide cast-in-place storm water management vault structure. (See Exclusion #4)



## EXHIBIT B

35.    Provide excavation and backfill of footings, grade beams, pits and crane pads. Stockpile spoils in a central location for removal by others.

36.    Reinforced concrete PEPCO vault structures shown on the Structural Drawings. Miscellaneous metals for the vault structures are by others.

37.    Provide one sheet wide plywood protection on roofs adjacent to this structure.

## EXCLUSIONS:

1.    Permits and Fees, unless specifically noted above.

2.    Site work.

3.    Spoils removal.

4.    Providing sand layer, pvc piping, geo-textile fabric grid and gravel backfill inside of sand filter structure. Furnishing or installing sand filter 6" diameter wall pipe sleeves for clean-outs, access doors (Juniper Doors), and ladder rungs.

5.    Storm water sump pump and sand oil interceptor pits.

6.    Sewage ejector pit.

7.    Additional footing concrete as a result of over excavation or rock over-break.

8.    Drainage board, waterproofing and vertical foundation wall insulation.

9.    Dewatering, area sumping, deep wells and pumping of groundwater.

10.    Burning holes in sheeting and shoring piles for horizontal reinforcing steel penetrations.

11.    Testing and inspection except as specifically included.

12.    Installation and maintenance of cable safety rails at building perimeter and large interior openings after removal of concrete formwork.

13.    Temporary access stairs for use by other trades.



## EXHIBIT B

14. Any overhead protection of adjoining properties, roadways, construction entrances, pedestrian walkways, or for trade work to progress below concrete operation except as specifically included above.

15. Installation and maintenance of access roads and truck wash areas.

16. Temporary toilets for field personnel.

17. Temporary utility service, installation and usage charges, including power and water. Power supply and connection for tower crane to be provided by others.

18. Street cleaning, sewer drain video/cleaning and sewer inlet protection.

19. Flash patching or leveling of concrete slabs and decks where concrete has been placed within tolerance. Flash patching and/or leveling to accommodate structural deflections for follow-on trade work is excluded.

20. Furnish or installation of mechanical or electrical sleeves, conduits, drains, and hanger inserts for mechanical, electrical and ceiling systems. All items installed by others shall be attached to formwork with nails in lieu of screws. Deck and wall formed openings indicated and dimensioned on the Structural Drawings will be provided by Subcontractor. All slab openings not indicated and dimensioned on the Structural Drawings shall be laid out by others, as the deck is framed and prior to start of reinforcing steel.

21. Furnishing masonry shelf angle wedge inserts.

22. Furnishing or installation of metal expansion joints.

23. Grouting of recessed slab pre-cast connection pockets, structural steel, doorframes, louver frames, metal expansion joints, mechanical/electrical openings and sleeves.

24. Underlayment, self-leveling concrete topping, or existing concrete repair work.

25. Joint sealants, routing and prep work of construction and control joints for sealant application.

26. Tower crane use for other trades.



CLARK CONCRETE CONTRACTORS LLC
Subcontract Agreement Dated: September 17, 2003
**Revised: September 24, 2003**

## EXHIBIT D

### GENERAL REQUIREMENTS:

This Subcontract shall include, but is not limited to, the items listed below:

1.  Prior to proceeding with any work on this project, Clark may require that a pre-mobilization start-up meeting be held with our Regional Director and/or Project Safety and Health Manager. This meeting will review the established Project Safety Start-Up Program. Subcontractor's project supervisor and supervisors of any subcontractors working for Subcontractor must attend.

2.  Extra work tickets will not be honored unless signed by an Officer of Clark.

3.  This Subcontract is contingent upon Owner approval. Subcontractor will not proceed with the work of this Subcontract without the following: specific written direction from Clark, an executed Subcontract, approved performance and payment bonds (if required), and receipt of approved insurance certificate(s) by Clark.

4.  Where Subcontractor is to provide a bond, Subcontractor shall provide acceptable consent(s) of surety to any reduction in retainage and to final payment, or as otherwise reasonably requested by Clark. Receipt of such consent by Clark is a condition precedent to Clark's obligation to pay funds to Subcontractor.

5.  Subcontractor agrees that as a condition precedent to its receiving any CAD information from the project architect or any other designer to the project, Subcontractor will, at Clark's direction, either sign directly the indemnity and other documentation required by the architect or designer related to the CAD information or will indemnify, defend and hold harmless Clark for any and all damages, losses, claims, liabilities or costs incurred by Clark arising out of the use of the CAD information. This indemnification obligation is in addition to those set forth in the Subcontract and other Contract Documents.

6.  A set of reproducible Contract Documents will be on file at a printer selected by Clark. Any Contract Documents must be purchased directly from the printer at no cost to Clark.

7.  **It is the intent of this Subcontract that the work performed pursuant hereto be complete and acceptable in every respect. The descriptions of the work included herein are clarifications of specific items and are not intended to limit the scope of work required or reasonably inferable for complete systems in accordance with the Contract Documents. Subcontractor includes the cost to perform all work necessary to provide a complete and useable facility in accordance with the scope of this Subcontract and the Contract Documents.**

8.  Where back charges arise between Subcontractors or between the Subcontractor and Clark, charges shall be at cost without markup for overhead or profit.

## EXHIBIT D

9.  In accordance with the requirements of the Owner-Contractor Agreement, the provisions listed below are specifically included by reference in this Subcontract. This Subcontractor is bound to Clark for compliance with these provisions of the Owner-Contractor Agreement to the same extent that Clark is bound to the Owner. Subcontractor agrees to include these provisions in any lower tier subcontract(s) and shall be responsible for the compliance of its lower tier subcontractor(s). This Subcontractor agrees to furnish all submittals and documents required for such compliance in accordance with the requirements of said provisions:

    a.  Department of Human Rights and Minority Business Development, Memorandum of Understanding.

    b.  For subcontracts in excess of $100,000, sign and comply with the District of Columbia Department of Employment Services (DOES) First Source Employment Agreement.

    c.  For subcontracts in excess of $500,000, registration of an approved Apprenticeship Program with the DC Office of Apprenticeship Information and Training is required.

10. Within 30 days of the award of this Subcontract, Subcontractor shall provide a detailed, itemized schedule of all equipment and material to be provided by this Subcontractor, and shall update the schedule monthly until all items are delivered. For each piece of equipment or material required to perform the Subcontractor's work, the list shall include the ultimate supplier, the Subcontractor's purchase order number to manufacturer, the supplier's representative and phone number, proposed and actual submittal dates, required submittal approval dates and the original and current scheduled delivery dates.

11. This Project intends to use a web-based project management application for the distribution of the project information including, but not limited to, RFI's, transmittals and correspondence. Subcontractor is to maintain an active Internet account and a minimum of one (1) license for the Project duration.

12. **This Subcontractor shall be responsible for the daily clean-up and removal of all trash and debris which results from this Subcontractor's operations.**

13. This Subcontractor agrees that neither he nor anyone employed by him shall display or publish advertising matter of any description or will take pictures or photographs of the work or on the site without written permission of Clark and the Owner.

14. Construction activity shall not occur on the site prior to 7:00 a.m. or after 7:00 p.m. Monday-Saturday. Pile driving and the use of extraordinarily loud construction vehicles and equipment will not begin until 8:00a.m. No construction activity will occur on Sunday. Excessive exterior noise will be kept down on Saturday from 9:00a.m. until the end of construction activities for the day. In addition, pile driving will not be permitted on Saturday or Sunday.



CLARK CONCRETE CONTRACTORS LLC
Subcontract Agreement Dated: September 17, 2003
**Revised: September 24, 2003**

## EXHIBIT D

15. Parking on 11th Street and L street is prohibited. All local construction parking is to take place in the parking lot across 10th street from the construction site. Payment for parking services will be handled via change order to the contract after agreement between subcontractor, owner, and Clark.

16. All construction traffic will follow the traffic management plan from DC DOT. A copy of the plan is available in the Clark office. Subcontractors are to ensure that all construction vehicles, especially heavy trucks, follow the plan.

17. The Subcontractor shall prepare early one complete condominium unit for approval by the Owner and Architect. The condominium unit shall serve as a Standard for the balance of the condominium units of the Project. Subcontractor will be responsible for completing all units to the Standard of quality established by the approved early unit. In no event will approval of the Standard modify the terms of the Contract Documents. Costs to perform this out of sequence work are included in this Subcontract Agreement.

18. Subcontractor shall assume all warranty obligations that Clark has assumed towards the Owner. This Subcontract includes a two (2) year warranty from the date of the Substantial Completion of this Project, except where exceeded by the Contract Documents requirements.


## EXHIBIT G
(8/19/03)

**Bid Clarifications:**

1. We include color and pattern selections from manufacturer's standard colors and patterns where finish is specified to be selected by the Architect, unless clarified otherwise in this document.

2. We have included a standard color for the overhead doors in lieu of a custom color.

3. Section 1.23 of Specification Section 15010 regarding objectionable noises is not included as it does not provide a standard measure. Our bid is based on the acoustic properties of the specified products.

4. Exposed concrete ceilings within the condominium dwelling units are included as painted concrete. Paint type, color, and number of coats will be the same as the adjacent walls.

5. The kitchen granite countertops are provided in Sand Black to match the sample approved by the Owner on 6/2/03 in lieu of the specified Absolute Black.

6. We have included an alternate brick Type 3 for the specified exterior brick.

7. The exterior stone base on 8/A823 will be provided as split face block.

8. The balcony railings will be provided as manufacturer's standard, pre-finished aluminum rails, in a manufacturer's standard color, with a single top bar. The balcony slab wrap detail on 6/A801 is deleted.

9. The decorative grilles shown on 4/A811 are deleted. The louvers in these locations will upgraded to architectural louvers.

10. We have included a manufacturer's standard window receptor in lieu of the specified window receptor.

11. Manufacturer's standard male-female window mullions are included in lieu of the 3-piece mullions shown on the Contract Documents. The manufacturer's standard window mullion will be provided at all window types except for type "C". The Type "C" window mullions will remain as specified. All mullion transitions between terrace doors and sidelights will remain as specified.

12. The storefront doors will be provided with the manufacturer's standard hardware in lieu of the specified hardware products.


## EXHIBIT G
### (8/19/03)

13. The ceramic tile at shower stalls will be terminated one tile above the showerhead plumbing. The remaining height of the wall will be painted.

14. Ceramic tile is not included in the P-1 level bathroom. The floor will be painted concrete.

15. Painting at the underside of the balconies is not included. The surface is to be exposed concrete.

16. Elevator entrances will be provided as bolted knock-down frames in the manufacturer's standard color options. Additionally, the elevator management terminal in the penthouse and dual mode elevator operation is not included.

17. As there are discrepancies between the Architectural and Plumbing Drawings, (double sinks versus single sinks) the bathroom master bath vanity plumbing is based on the Architectural drawings.

18. The ISE Insta-hot water makers are not included.

19. An alternate control system for HVAC for the penthouse mechanical room is provided in lieu of the specified product. The control system will have standard 24V controls for the units with a programmable night set-back manual thermostat in lieu of the thermostat specified.

20. The speed controllers on the toilet exhaust fans are not included.

21. We have included plumbing fixtures by Suneli in lieu of the specified manufacturer.

22. Two convenience receptacle outlets in the corridor on each floor are not included. The remaining receptacle outlets are circuited vertically rather than horizontally.

23. We have not included dimmer switches.

24. We have not included the PVC conduits shown from the telephone and TV closets to the condominiums units.

25. Our price is based on an emergency generator size of 125KW with reduced feeders and transfer switches in lieu of the 275KW generator and applicable feeders and transfer switches specified.

26. MC cable for the fire alarm system wiring is used in lieu of conduit and wire. Condominium smoke detectors are to be 120V, and alarm only at the condominium unit.

**EXHIBIT G**
(8/19/03)

The fire alarm system within the dwelling unit will not have sub-relay bases or monitoring by the building's fire alarm system.

27. Condominium panel feeders are revised from copper to aluminum.