**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ZURICH AMERICAN INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 1:06cv693-RJL ) |
| CLARK CONCRETE CONTRACTORS, LLC, | ) ) |
| Defendant. | ) ) |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT CLARK CONCRETE CONTRACTORS LLC'S MOTION FOR SUMMARY JUDGMENT**

Charles M. Allen, Esquire (VSB No. 30183) (U.S. Dist. Ct. Bar No. (D.D.C.) MI0004)
GOODMAN, ALLEN & FILETTI, PLLC
4501 Highwoods Parkway, Suite 210
Glen Allen, Virginia 23060
Telephone:    (804)346-0600
Facsimile:    (804) 346-5954

CLAUSEN MILLER P.C.
Robert A. Stern, Esq. (not admitted in D.C.)
Virginia M. Markovich (admitted pro hac vice in D.C.)
One Chase Manhattan Plaza
New York, New York 10005
Telephone:    (212) 805-3900
Facsimile:    (212) 805-3939

221762.1

## TABLE OF CONTENTS

|  | PAGE |
|---|---|
| **TABLE OF AUTHORITIES** | 3 |
| **PRELIMINARY STATEMENT** | 4 |
| **PLAINTIFF'S STATEMENT OF FACTS** | 4 |
| **LEGAL ARGUMENT** | 6 |
|     **POINT I** | 6 |
|     **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT MUST BE DENIED BECAUSE THERE ARE GENUINE ISSUES OF MATERIAL FACT IN DISPUTE** | |
|     **POINT II** | 7 |
|     **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT MUST BE DENIED WITH RESPECT TO EVERY COUNT OF PLAINTIFF'S COMPLAINT** | |
|         A. **DEFENDANT ACTED NEGLIGENTLY.** | 7 |
|         B. **DEFENDANT BREACHED A CONTRACT.** | 10 |
|         C. **DEFENDANT IS LIABLE UNDER THE DOCTRINE OF *RES IPSA LOQUITUR*.** | 11 |
| **CONCLUSION** | 12 |

# **TABLE OF AUTHORITIES**

| **CASES** | **PAGE** |
|---|---|
| Ceco Corp. v. Coleman, 441 A.2d 940, 945-946 (D.C. 1982) | 9 |
| Chadbourne v. Kappaz, 779 A.2d 293, 295 (D.C. 2001) | 9 |
| Childs v. Purll, 882 A.2d 227, 235 (D.C. 2005) | 9 |
| Crenshaw v. Washington Metro. Area Transit Auth., 731 A.2d 381, 383 (D.C. 1999) | 11 |
| Dist. of Columbia v. Campbell, 580 A.2d 1295 (D.C. 1990) | 10 |
| District of Columbia v. Van Harris, 770 A.2d 82, 87 (D.C. 2001) | 7 |
| Jane W. v. President and Dirs. of Georgetown College, 863 A.2d 821, 826 (D.C. 2004) | 6 |
| Kotsch v. District of Columbia, 2007 D.C. App. LEXIS 267, *10-*11 | 6 |
| Griffin v. Acacia Life Ins. Co., 2007 D.C. App. LEXIS 266, *30 | 7 |
| Haily v. Otis Elevator Co., 636 A.2d 426, 428 (D.C. 1994) | 11 |
| Jarrett v. Woodward Brothers, 751 A.2d 972, 980 (D.C. 2000) | 9 |
| Liu v. Allen, 894 A.2d 453, 459-460 (D.C. 2006) | 9 |
| Murphy v. Schwankhous, 2007 D.C. App. LEXIS 244, *6 | 6 |
| Otis Elevator Co. v. Tuerr, 616 A.2d 1254, 1258 (D.C. 1992) | 11 |
| Potts v. District of Columbia, 697 A.2d 1249, 1251 (D.C. 1997) | 6 |
| Scott v. James, 731 A.2d 399, 404 (D.C. 1999) | 11 |
| Tobin v. John Grotta Co., 886 A.2d 87, 89-90 (D.C. 2005) | 6 |

221762.1

**PRELIMINARY STATEMENT**

Plaintiff, Zurich American Insurance Company ("Plaintiff" or "Zurich"), files this Memorandum of Law in Opposition to Defendant Clark Concrete Contractors, LLC's ("Defendant" or "CCC") Motion for Summary Judgment.

The Motion seeks to dismiss Plaintiff's claims alleging that there is no evidence to establish that Defendant is liable under the theories of negligence, breach of contract and the doctrine of *res ipsa loquitur*. For the reasons set forth below, Defendant's Motion must be denied.

**PLAINTIFF'S STATEMENT OF FACTS**

Clark Quincy Park, LLC ("Quincy Park") retained both Prospect Waterproofing Company ("Prospect") and Defendant to perform work at the Quincy Park Condominium Project ("Project") in Washington, D.C. See the Subcontract Agreements, attached as Defendant's Exhibits "1" and "2". Specifically, Prospect was hired as a subcontractor to perform waterproofing work at the Project. Defendant was retained by Quincy Park to perform concrete work at the Project, which included the pouring of concrete on a penthouse deck.

Paragraph 23(b) of Defendant's Subcontract Agreement with Quincy Park stated, in pertinent part that:

> Subcontractor assumes full responsibility to provide and maintain, within its scope of work, a safe and healthful workplace for its employees, as well as for **the benefit of all contractors, fellow workers and the general public**.

Paragraph 25 of Exhibit "B" of Defendant's Subcontract Agreement with Quincy Park also provided, in pertinent part, that with respect to its duties for openings in decks, Defendant shall:

221762.1

> Provide covers for small framed openings in decks such as ductwork shafts, pipe chases etc., during our operations.  Covers to be maintained by others after concrete work is completed in the area, and removed by others.

A few days prior to the loss, Defendant poured the concrete on the floors of the penthouse deck. *See Duane Carreiro Deposition, Defendant Field Engineer and Assistant Superintendent at the Project 38, attached hereto as Exhibit "1".*[1]  The process required that as each floor is poured the forms underneath are stripped away. *See John W. Neuenschwander Deposition, Superintendent of Quincy Park, 60, Exhibit "2".*  When the forms are stripped away under the penthouse deck, that is when the opening becomes a hazard. *See Neunschwander Deposition, 60, Exhibit "2".*

On April 20, 2004, Defendant stripped away the forms from the penthouse deck. *See Erick Chub Deposition, Prospects Foreman, 37, 39, Exhibit "3".*  At that point, it was Defendant's responsibility at common law and contractually, to cover the holes that remained after the forms were stripped from the penthouse deck so that they would not be a fall hazard. *See Neuenschwander's Deposition, 60, Exhibit "2".*  However, on and after April 20, 2004, Defendant failed to properly cover the entire surface of the penthouse deck.  As a result, on April 21, 2004, while Prospect's employee was performing waterproofing work on the penthouse deck, he fell through an unsecured hole (the "Incident").  As a result of the Incident, Prospect's employee was severely injured.

Prospect's employee was in the course of his employment when the Incident occurred and filed a Worker's Compensation claim for the injuries he sustained as a result of the Incident with Prospect's workers compensation carrier, Plaintiff.  Plaintiff paid Prospect's employee's Workers Compensation claim for his injuries sustained in the amount of $453,280.79.  As a

---

[1] Unless otherwise indicated, all references to an "Exhibit" are the documents annexed to this Opposition.

result, Plaintiff filed this recovery action against Defendant alleging negligence, breach of contract and *res ipsa loquitur* in its Complaint.

## LEGAL ARGUMENT

### POINT I

### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT MUST BE DENIED BECAUSE THERE ARE GENUINE ISSUES OF MATERIAL FACT IN DISPUTE

This Court is undoubtedly familiar with the standard for summary judgment. A party moving for summary judgment must show that there is no genuine issue of material fact in order to be entitled to the judgment as a matter of law. A party opposing a properly supported motion for summary judgment must establish specific facts that show that there is a genuine issue for trial and cannot rest solely on the allegation made in the pleadings. D.C. Super. Ct. Civ. R. 56 (e); see also Potts v. District of Columbia, 697 A.2d 1249, 1251 (D.C. 1997) (citing D.C. Super. Ct. Civ. R. 56 (e)); Kotsch v. District of Columbia, 2007 D.C. App. LEXIS 267, *10-*11; Murphy v. Schwankhous, 2007 D.C. App. LEXIS 244, *6 ("Once the moving party has demonstrated that there appear to be no genuine issues of material fact, the burden shifts to the non-moving party to come forward with specific evidence showing, to the contrary, that genuine issues of material fact do exist"); Tobin v. John Grotta Co., 886 A.2d 87, 89-90 (D.C. 2005) (quoting Jane W. v. President and Dirs. of Georgetown College, 863 A.2d 821, 826 (D.C. 2004)) ("Thus, a party opposing a motion for summary judgment must produce at least enough admissible evidence to make a prima facie case in support of her [position]").

As established in Plaintiff's Opposition to Defendant's Statement of Material Facts Not in Dispute there are materials facts which are in dispute in this matter which do not warrant the granting of Defendant's Motion. For instance, an issue of fact exists as to whether the piece of plywood that was used to cover the opening in the penthouse deck was secure. Deposition

testimony indicates that Defendant did not place a piece of plywood over an opening on the penthouse deck and secure the plywood with nails, into the concrete deck.  In fact, there is evidence that were two pieces of plywood, which were loosely laid, and one was bigger than the other.  *See Chub Deposition, 77, 81, Exhibit "3"*; and *Pearcy Deposition, 55, 66, 67, Exhibit "4"*.  Additionally, the pieces of plywood were not fastened.  *See Chub Deposition, 77, 81, Exhibit "3"*; *Carreiro Deposition, 68-69, Exhibit "1"; and Neunschwander Deposition, 89, Exhibit "2"*.  Furthermore, an issue of fact exists as to whether the plywood was properly marked "hole" in orange paint.  Deposition testimony revealed that nothing was written on any of the pieces of plywood, no markings or paint.  *See Chub Deposition, 82, Exhibit "3"*; *Carreiro Deposition, 69, Exhibit "1"; and Neunschwander Deposition, 89, Exhibit "2"*.

For these reasons, Defendant's Motion must be denied in its entirety.

## POINT II

### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT MUST BE DENIED WITH RESPECT TO EVERY COUNT OF PLAINTIFF'S COMPLAINT

#### A. DEFENDANT ACTED NEGLIGENTLY

In the District of Columbia, in order for the plaintiff to make a showing of negligence, the plaintiff must prove: (1) a duty of care owed to the plaintiff by the defendant; (2) the defendant breached that duty; (3) there was damage to plaintiff's interest and (4) the breach was a proximate cause of the damage. District of Columbia v. Van Harris, 770 A.2d 82, 87 (D.C. 2001); see also Griffin v. Acacia Life Ins. Co., 2007 D.C. App. LEXIS 266, *30.

Defendant concedes in its Motion papers that it had a duty to maintain a safe and healthful workplace for its employees and fellow workers, which includes Prospect.  However, Defendant contends that it fulfilled this duty.  In support of this contention, Defendant refers to the Occupational Safety & Health Administration ("OSHA") which sets forth safety

- 7 -

221762.1

requirements for employers on construction sites. Specifically, Defendant cites to the OSHA regulation 29 CFR §CFR1926.502(i)(2)-(4) which sets forth the criteria for covers. This regulation stated, in pertinent part:

> "Covers." Covers for holes in floors, roof, and other walking/working surfaces shall meet the following requirements:
>
> All covers shall be secured when installed so as to prevent accidental displacement by the wind, equipment or employees.
>
> All covers shall be color coded or they shall be marked with the word "HOLE" or "COVER" to provide warning of the hazard.
>
> A copy of this OSHA regulation is attached hereto as Exhibit "5".

Defendant argues that since there is uncontroverted evidence that it fulfilled these OSHA requirements, it is not liable for negligence. This fact is clearly in dispute. Defendant did not place a piece of plywood over an opening on the penthouse deck and secure the plywood with nails, into the concrete deck. In fact, there were two pieces of plywood, which were loosely laid, one was bigger than the other and neither was secured. *See Chub Deposition, 77, 81, Exhibit "3"; and Pearcy Deposition, 55, 66, 67, Exhibit "4"*. Additionally, the pieces of plywood were not fastened. *See Chub Deposition, 77, 81, Exhibit "3"; Carreiro Deposition, 68-69, Exhibit "1"; and Neunschwander Deposition, 89, Exhibit "2"*. Furthermore, the plywood was not marked "hole" in orange paint. In fact, nothing was written on any of the pieces of plywood and there were no markings or paint. *See Chub Deposition, 82, Exhibit "3"; Carreiro Deposition, 69, Exhibit "1"; and Neunschwander Deposition, 89, Exhibit "2"*.

Additionally, Defendant argues that by contract (i.e. its subcontract with Quincy Park), it was expressly relieved of the duty to maintain the cover at issue after it was secured in accordance with the OSHA regulations. This fact is also in dispute since as previously indicated there is evidence that Defendant did not secure the plywood cover for the hole in accordance

- 8 -

221762.1

with the OSHA safety requirements and thus was never relieved of its duty to cover this hole pursuant to its subcontract with Quincy Park.

Finally, Defendant argues that it was not working on the penthouse deck at the time of the accident and thus did not have the duty to discover hazards on the penthouse at the time of the accident. This argument is irrelevant. Even if Defendant was not working in the area on the day of the accident, it was not relieved of its duty to maintain and control a safe workplace, since it clearly did not meet the OSHA requirement of securing the hole in the penthouse deck.

Lastly, Defendant argues that since it had no duty with regards to the area and properly secured and marked the hole, it was not negligent. However, as proven above, Defendant did not properly secure and mark the hole. Furthermore, courts have held that where a plaintiff is a member of a class that a particular statutory or regulatory standard is enacted to protect, or the statutory/regulatory standard is enacted to prevent the type of accident that occurred, the defendant will be found negligent, as a matter of law, when the plaintiff can show his relationship to the statute and the standard is inexplicably violated. In Ceco Corp. v. Coleman, 441 A. 2d 940, 945-946 (D.C. 1982), the trial court held that violation of either a D.C. safety statute or OSHA regulation is negligence as a matter of law; Jarrett v. Woodward Brothers, 751 A.2d 972, 980 (D.C. 2000) (citing Ceco at 945); Liu v. Allen, 894 A.2d 453, 459-460 (D.C. 2006) (quoting Chadbourne v. Kappaz, 779 A.2d 293, 295 (D.C. 2001)) (". . . where a particular statutory or regulatory standard is enacted to protect persons in the plaintiff's position or to prevent the type of accident that occurred, and the plaintiff can establish his relationship to the statute [or regulation], unexplained violation of that standard renders the defendant negligent as a matter of law"); Childs v. Purll, 882 A.2d 227, 235 (D.C. 2005) (quoting Chadbourne at 295).

- 9 -

221762.1

Clearly, the OSHA regulations were enacted to protect workers from workplace hazards. Prospect's employee, a fellow worker at the Project, is a member of a class specifically protected by the statute. Pursuant to the OSHA regulation and Defendant's subcontract with Quincy Park, Defendant clearly had a duty to properly cover and secure the hole in the penthouse deck. Defendant failed to do this and, thus, not only violated the OSHA regulation, but also breached its common law duty.

For these reasons, Defendant's Motion must denied in its entirely.

**B.    DEFENDANT BREACHED A CONTRACT.**

Defendant asserts that it did not breach any contractual duty with Prospect since it was not an intended beneficiary of Defendant's contract with Quincy Park. This is untrue. For instance, Paragraph 23(b) of Defendant's Subcontract Agreement with Quincy Park, attached as Defendant's Exhibit "1" and "2", stated, in pertinent part, that:

> Subcontractor assumes full responsibility to provide and maintain, within its scope of work, a safe and healthful workplace for its employees, as well as for **the benefit of all contractors, fellow workers and the general public**.

Based on this paragraph, the parties clearly intended for Defendant to have a contractual duty to maintain a safe work place for the benefit of all fellow workers, which included Prospect. Courts have held that a third-party can enforce the contract of the contracting parties intended for that third-party to benefit from performance of the contract. Dist. of Columbia v. Campbell, 580 A.2d 1295 (D.C. 1990). Clearly, Prospect was intended to benefit from Defendant's contract with Quincy Park.

Defendant further argues that assuming Prospect was to benefit from its contract with Quincy Park, it fulfilled its contractual duty. Defendant states that Paragraph 25 of the Subcontract Agreement, attached as Defendant's Exhibits "1" and "2", required that the covers

be secured and then maintained by others after concrete work was complete. Based upon this, Defendant argues that there is uncontroverted evidence that Defendant satisfied this obligation when it secured the plywood board over the penthouse deck in accordance with OSHA regulations. Defendant further argues that it was thereafter expressly relieved of its duty to maintain the cover, because it was to be maintained by others after the concrete work was complete. These facts are clearly in dispute. As discussed above, the testimony/evidence clearly proves that Defendant did not comply with OSHA regulations -- it neither secured and/or properly marked the cover. Lastly, the fact that Defendant alleges that it completed its concrete work, is irrelevant since it was not relieved of its duty to maintain and control a safe workplace when it clearly did not meet OSHA regulations. As such, Defendant breached its contractual duty by failing to properly secure and/or mark the plywood cover. Therefore, as a matter of law, Defendant breached a contract.

For these reasons, Defendant's Motion must be denied in its entirety.

### C.  DEFENDANT IS LIABLE UNDER THE DOCTRINE OF *RES IPSA LOQUITUR*.

In the District of Columbia, the plaintiff must establish the following in order to invoke the doctrine of *res ipsa loquitur*: (1) the occurrence is of the sort that would not ordinarily occur absent someone's negligence; (2) the occurrence must be caused by an agency that has exclusive control of the defendant(s); (3) the occurrence must in no part be due to any voluntary action or contribution on the part of the plaintiff. Scott v. James, 731 A.2d 399, 404 (D.C. 1999) (citing Haily v. Otis Elevator Co., 636 A.2d 426, 428 (D.C. 1994)) (quoting Otis Elevator Co. v. Tuerr, 616 A.2d 1254, 1258 (D.C. 1992)); Crenshaw v. Washington Metro. Area Transit Auth., 731 A.2d 381, 383 (D.C. 1999).

Defendant asserts that the area in which Mr. Coc was working was not in the exclusive control of Defendant because Defendant last worked on the penthouse deck three weeks prior to the date of the accident. This claim is clearly in dispute. As stated above, Defendant poured the concrete on the penthouse deck a matter of days, maybe a week or less before April 21, 2004. *See* C*arreiro Deposition, 38, Exhibit "1"*. Furthermore, Defendant's employees were working in the area of the penthouse deck on April 20, 2004, a day prior to the incident. *See Chub Deposition, 39-40, Exhibit "3"*. Furthermore, as previously discussed, the fact that Defendant was not working on the penthouse deck on the date of the accident, is irrelevant since it was not relieved of its duty to maintain and control a safe workplace when it clearly did not meet the OSHA requirement of securing and marking the plywood cover on the penthouse deck. Therefore, Defendant is liable under the doctrine of *res ipsa loquitur*.

For these reasons, Defendant's Motion must be denied its entirety.

Defendant requests an oral hearing on this matter.

## **CONCLUSION**

Based upon the foregoing facts and law, it is respectfully submitted that Defendant's Motion for Summary Judgment should be denied in its entirety.

Dated:   June 21, 2007

        Respectfully submitted,

        By Counsel
        /s/Virginia M. Markovich
        /s/Charles M. Allen

- 13 -

CLAUSEN MILLER P.C.
Virginia M. Markovich (admitted *pro hac vice* by Minute Order dated Sept. 29, 2006, under her maiden name "Virginia M. De Luca")
Robert A. Stern, Esq. (not admitted in D.C.)
One Chase Manhattan Plaza
New York, New York 10005
Telephone:     (212) 805-3900
Facsimile:     (212) 805-3939


Charles M. Allen, Esquire (VSB No. 30183) (U.S. Dist. Ct. Bar No. (D.D.C.) MI0004)
GOODMAN, ALLEN & FILETTI, PLLC
4501 Highwoods Parkway, Suite 210
Glen Allen, Virginia 23060
Telephone:     (804)346-0600
Facsimile:     (804) 346-5954

221762.1